586 P.2d 1339 (1978)
Stuart MacPHAIL, d/b/a House of Stuart, Inc., Plaintiff-Appellant,
v.
Paul STEVENS, d/b/a Denver Singles Guide, Defendant-Appellee.
Stuart MacPHAIL, d/b/a House of Stuart, Inc., Plaintiff-Appellant,
v.
COLORADO CAPITOL CITY BROADCASTING COMPANY, d/b/a KVOD Guide, Defendant-Appellee.
No. 76-889.
Colorado Court of Appeals, Div. II.
June 15, 1978.
Rehearing Denied June 29, 1978.
Certiorari Denied December 4, 1978.
*1340 Edward M. Bendelow, Denver, for plaintiff-appellant.
Montgomery, Little, Young, Campbell & McGrew, P.C., Richard O. Campbell, Donald G. Musselman, Denver, for defendant-appellee Paul Stevens, d/b/a Denver Singles Guide.
Yegge, Hall & Evans, Thomas B. Kelley, Denver, for defendant-appellee Colorado Capitol City Broadcasting Co., d/b/a KVOD Guide.
BERMAN, Judge.
Plaintiff, Stuart MacPhail, d/b/a House of Stuart, Inc. (MacPhail), brought these actions against defendants, Paul Stevens, d/b/a Denver Singles Guide (Stevens), and Colorado Capitol City Broadcasting Company, d/b/a the KVOD Guide (Capitol City), seeking damages and injunctions restraining defendants' use of the trade name "Denver Magazine" or other similar names in their businesses. After consolidating the separately filed actions, the trial court granted the defendants' motions for summary judgment and dismissed the complaints. Plaintiff appeals, and we affirm.
The following facts, as presented by the parties' affidavits, are undisputed. On January 4, 1972, MacPhail filed a "Certificate of Assumed or Trade Name" with the Colorado Secretary of State, indicating his desire to transact business under the name "Denver Magazine, Inc." For the next several years, MacPhail engaged in preliminary efforts to determine the appropriate market and format for a magazine specifically adapted to the Denver community, and in making preparations for such a magazine's eventual publication. MacPhail first published his "Denver Magazine," in a tabloid newsprint format, on September 12, 1975.
Earlier, on July 28, 1975, Stevens had announced in his monthly publication, "Denver Singles Guide" that with the next issue, the magazine would become the "Denver Magazine." Stevens first published the new magazine, entitling it "Denver," on August 25, 1975.
During the summer months of 1975, Capitol City also began preparations toward expanding its monthly guide to the programming of its radio station, KVOD-FM, a publication known as "The KVOD Guide," into a city magazine. Capitol City apparently published the first regular monthly edition of the new magazine replacing "The KVOD Guide" on October 1, 1975, entitling it "The Denver Magazine."
*1341 MacPhail, Stevens, and Capitol City all continued to publish their magazines, "Denver Magazine," "Denver," and "The Denver Magazine," respectively, at the time of trial.
MacPhail contends that the trial court erred in concluding that, despite his filing a certificate with the Secretary of State and his preparations for a magazine entitled "Denver Magazine," he was not entitled to the exclusive use of that name as a trademark. Additionally, he urges that the trial court erred in concluding that the defendants' new publications did not constitute unfair competition. Both of these contentions lack merit.
At the outset, we agree with the trial court that MacPhail's filing a certificate of assumed or trade name pursuant to C.R.S. 1963, 141-2-1 (now § 7-71-101, C.R.S. 1973), did not confer on him the right to use "Denver Magazine" as a trademark. Such registration is intended only to afford the public a means of ascertaining the identities of persons or entities doing business under an assumed name, see Smith v. Stubbs, 16 Colo.App. 130, 63 P. 955 (1901), and adds nothing to the common law relating to trademarks or unfair competition. See Driverless Car Co. v. Glessner-Thornberry Driverless Car Co., 83 Colo. 262, 264 P. 653 (1928). See also 3 R. Callmann, The Law of Unfair Competition Trademarks and Monopolies, § 76.2(j) (3d ed. 1969). A separate statute, whose provisions were not complied with here, governs the registration of trademarks adopted and used in this state. See § 7-70-101, et seq., C.R.S. 1973 (formerly C.R.S. 1963, 141-1-1, et seq.).
And, contrary to MacPhail's assertions, the name "Denver Magazine" is not so "inherently distinctive" as to be exclusively appropriable as a trademark immediately upon use, without regard to whether it has acquired a secondary meaning. Rather, "Denver" is a geographic designation, and "Magazine" is a generic or descriptive term, and neither singularly nor in combination are these words entitled to trademark protection without a showing that a secondary meaning has attached to them. See Colorado Ass'n of Accountants v. Colorado Society of Certified Public Accountants, 152 Colo. 563, 384 P.2d 94 (1963); Driverless Car Co. v. Glessner-Thornberry Driverless Car Co., supra; Alaska Northwest Publishing Co. v. A. T. Publishing Co., 319 F.Supp. 963 (D.Alaska 1970), rev'd on other grounds, 458 F.2d 387 (9th Cir. 1972) (magazine title "ALASKA" not exclusively appropriable). See generally 3 R. Callmann, supra, §§ 70.4, 72, 77.
Similarly, in the absence of fraud, a trade name or trademark must have acquired a secondary meaning or significance for its use to constitute unfair competition. American Furniture Company, a Corp. v. American Furniture Company, a Copartnership, 128 Colo. 160, 261 P.2d 163 (1953); Wood v. Wood's Homes, Inc., 33 Colo.App. 285, 519 P.2d 1212 (1974); see 3 R. Callmann, supra, § 77.1.
A secondary meaning is established when "by prior and continuous use of a name for a long period of time the public mind identifies the user or the name with the particular service or goods furnished by him, and thereby identifies the product by the name." Wood v. Wood's Homes, Inc., supra. (emphasis added) We agree with the trial court's determination that, as a matter of law, MacPhail's one-time use of the name "Denver Magazine" prior to his instituting this action was insufficient to establish a secondary meaning as to the title of his publication.
Accordingly, the court properly dismissed his claims for relief, whether premised on the theory of trademark infringement or unfair competition.
Judgment affirmed.
SMITH and RULAND, JJ., concur.