**MESA SPRINGS ENTERPRISES, INC.,**
**Plaintiff-Appellee,**

**v.**

**CUTCO INDUSTRIES, INC., Wilton Nelson, Pat Nelson, and Gennerman Enterprises, Inc., Defendants-Appellants.**

**No. 86CA0067.**

Colorado Court of Appeals,
Div. II.

Dec. 11, 1986.

As Modified on Denial of Rehearing
Jan. 15, 1987.

Certiorari Denied (Mesa Springs)
May 11, 1987.

C. Tremaroli, P.C., Cynthia L. Tremaroli, Colorado Springs, for plaintiff-appellee.

Holland and Hart, Hugh Q. Gottschalk, Curt Krechevsky, Denver, Cowan, Liebowitz & Latman, P.C., William M. Hart, David Goldberg, New York City, for defendants-appellants.

STERNBERG, Judge.

The defendants, Cutco Industries, Inc., and its franchisees, Wilton and Pat Nelson and Gennerman Enterprises, Inc., (Cutco) appeal a preliminary injunction issued by the trial court barring them from using the service mark "HAIRCRAFTERS" in El Paso County, Colorado. Cutco's sole contention of error on appeal is that the trial court erred in granting the preliminary injunction to plaintiff, Mesa Springs Enterprises, Inc. (Mesa). We agree and therefore vacate the injunction.

The granting or denial of a preliminary injunction is a decision which lies within the sound discretion of the trial court. *Rathke v. MacFarlane*, 648 P.2d 648 (Colo.1982). But, a preliminary injunction may not be granted unless the movant demonstrates a reasonable probability of success on the merits. Determination of that issue here hinges on the nature and timing of Mesa's "use" of the service mark HAIRCRAFTERS in relation to Cutco's use and federal registration of that mark.

Mesa's president, Ben Tremaroli, began operating a business in the Red Rock Canyon Shopping Center in Colorado Springs under the name "Red Rock Barbers" in October 1970. In October 1975, Cutco's predecessor in interest began using the HAIRCRAFTERS mark in interstate commerce for hair cutting and styling services.

In 1977, Tremaroli decided that a larger facility was needed for his expanding business, and during that summer he purchased land and hired an architect. He displayed the architect's drawings at the Red Rock Barbers shop to inform his clientele of the plan to move the shop, and to attract lessees for the new building. In the fall, Tremaroli and his staff decided that a new and more appropriate name would be needed for the business at the new location, since they could not take the Red Rock name with them.

In November 1977, the Red Rock staff conducted a contest among its customers to choose a new name for the business. All customers were invited to submit ideas for a new name for the shop. A drawing was held over the Christmas holiday, and the staff decided on HAIRCRAFTERS as the winning entry. Tremaroli promptly checked the Denver, Colorado Springs, and Pueblo area telephone books for similar names, and was unable to find any.

Immediately after the name was chosen, a sign was posted inside the Red Rock Barbers shop announcing that the name HAIRCRAFTERS had been chosen. All five operators in the shop began spreading the news by word-of-mouth, informing the clientele of the winning entry. A wooden plaque with the name HAIRCRAFTERS carved on it, presented by a customer to Tremaroli as a gift, was displayed in the waiting room of the Red Rock shop.

Mesa moved into its new location in June 1978 and thereafter operated exclusively under the name HAIRCRAFTERS. Mean-

while, Cutco had expanded its business into many areas of the United States as part of a growing franchise operation of over 300 salons using the name HAIRCRAFTERS. On February 28, 1978, a federal trademark was issued to Cutco for the service mark HAIRCRAFTERS pursuant to 15 U.S.C. § 1051, et seq. (1982) (The Lanham Act).

Early in 1983, a customer of Mesa's HAIRCRAFTERS salon showed Tremaroli a clipping from the Wall Street Journal advertising for barber and beauty shop franchisees. Cutco's predecessor in interest was listed as franchisor, and HAIRCRAFTERS was listed as a federally registered mark owned by the franchisor. In January 1984, having discovered 17 salons using the name HAIRCRAFTERS in the Omaha, Nebraska, area, Tremaroli's son, the treasurer of Mesa, registered the HAIRCRAFTERS mark with the State of Colorado, filing an affidavit stating that June 1978 was the date on which Mesa first used the mark. Tremaroli's son did not consult the other corporate officers or an attorney before entering this date.

In February 1984, the defendants Nelsons, franchisees of Cutco, filed a trade name affidavit in El Paso County using the name HAIRCRAFTERS. At Tremaroli's request, the Nelsons refrained from using the name HAIRCRAFTERS after Cutco informed them that they could use another registered mark owned by Cutco (GREAT EXPECTATIONS) until the matter was resolved.

In October 1985, Cutco gave approval for two of its licensees to use the name HAIRCRAFTERS in Colorado Springs. Mesa initiated this action on November 15, 1985, and obtained an *ex parte* temporary restraining order against Cutco and its licensees, restraining them from the use of the HAIRCRAFTERS mark in the State of Colorado. The temporary restraining order was vacated on November 25, and for nearly one month both parties were allowed to use the HAIRCRAFTERS mark. During this period, customers of Mesa received coupons for hair care service mailed out by Cutco, but presented them for redemption at Mesa's HAIRCRAFTERS salon, demonstrating that substantial confusion existed on the part of Mesa's customers. Mesa then obtained a preliminary injunction prohibiting further use of the HAIRCRAFTERS mark by Cutco in El Paso County, Colorado.

The parties agree that resolution of this dispute hinges on the legal effect of Mesa's activities prior to February 28, 1978, the date that Cutco's federal registration of the HAIRCRAFTERS service mark issued, putting all future users on constructive notice of Cutco's exclusive ownership of the mark. *See* 15 U.S.C. § 1072 (1982).

■ Under common law, a senior user of a trademark could not preempt use of the mark in remote geographical markets before it actually entered the market by advertising, reputation, or actual sales. *See* 2 J. McCarthy, *Trademarks & Unfair Competition* § 26:1D (1984). In 1946, the Lanham Act changed this by affording nationwide protection to registered marks, regardless of the areas in which the registrant actually used the mark. It achieved this result by providing that registration is "constructive notice of the registrant's claim of ownership." 15 U.S.C. § 1072. Such notice deprives subsequent users in a remote area of the common law defense of "good faith" adoption without notice.

However, the Act does preserve a limited area defense for an "intermediate junior user" whose adoption and first use of a mark is chronologically "intermediate" between the senior user's first use and the senior user's federal registration. J. McCarthy, *supra*, § 26:18.

The pertinent provision of the Lanham Act, 15 U.S.C. § 1115(b)(5), states, in part:
"If the right to use the registered mark has become incontestable under § 15 hereof, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce ... except when one of the following defenses or defects is established: ... (5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in

privity with him from a date prior to registration of the mark under this Act ...: Provided, however, [t]hat this defense or defect shall apply only for the area in which such continuous prior use is proved...."

█ The central issue in this case is whether Mesa's activities prior to Cutco's registration constitute "use" of the HAIRCRAFTERS service mark. To be of significance vis a vis Mesa's request for a preliminary injunction, that use would have to be sufficient to constitute a defense to Cutco's federal registration in El Paso County under the above provision of the Lanham Act, thus dropping the evidentiary status of registration from being "conclusive" of Cutco's exclusive right to use the mark nationwide to "prima facie," *see* 2 J. McCarthy, *supra*, at § 26:18; and, in addition, it would have to be sufficient to demonstrate Mesa's superior right to use of the HAIRCRAFTERS mark in El Paso County under common law, thereby justifying the entry of an injunction in Mesa's favor.

In granting Mesa's motion for a preliminary injunction, the trial court concluded that Mesa's promotional use of the name HAIRCRAFTERS prior to Cutco's registration, in connection with an existing business operation (Red Rock Barbers), constituted "use" within the meaning of the Lanham Act, and that there was therefore a reasonable probability that Mesa would prevail on the merits of its claim. The court acknowledged that mere promotion of a mark does not constitute "use" within the meaning of the Lanham Act provision at issue, but reasoned that promotional use in relation to an ongoing business brings this case within the statutory defense.

While cases exist establishing the "use in relation to an existing business" test, see *Modular Cinemas of America, Inc. v. Mini Cinemas Corp.*, 348 F.Supp. 578 (S.D. N.Y.1972), the trial court's application of this test to the facts of this case was error.

█ To prove the defense in question, an intermediate user must show: (1) that it adopted the mark without knowledge of the registrant's prior use; (2) that its use predated the registration; and (3) that its

use in the disputed area has been continuous since that time; additionally, it must show (4) the extent of the disputed area at the time registration issued. *See Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636 (D.C.Cir. 1982). The controversy here concerns the second element.

█ Mesa's promotion of the HAIRCRAFTERS name between its adoption of the name over the 1977 Christmas holiday and Cutco's federal registration on February 28, 1978, was merely an announcement of Mesa's intention to use the name in connection with services it would offer in the future. Mesa did not change its outdoor sign, the manner in which it answered the phone, or its business cards until June 1978, when it opened at the new location.

While Mesa argues that the naming contest itself was a conscious effort to fix in the customers' minds that the source of its services would be known by a different name, in reality the contest and subsequent activities were merely an effort to inform the customers that the HAIRCRAFTERS name would identify these services in the future, when the shop moved to its new location.

In January of 1984, Mesa's treasurer filed an affidavit with the Secretary of State stating that the date Mesa first used the HAIRCRAFTERS name was June 1978. At this time Mesa was aware that Cutco owned a federal registration for the mark.

█ Even if Mesa's promotional activities prior to February 28, 1978, could be considered sufficient "use" to drop the evidentiary status of Cutco's registration from "conclusive" to "prima facie," the nature and extent of these activities were insufficient to overcome even a prima facie right to exclusive use of the mark. To establish that it had obtained a superior right to the mark under common law by the date of Cutco's federal registration, Mesa would have had to adduce evidence that the name HAIRCRAFTERS had acquired a "secondary meaning" in El Paso County. Secondary meaning is shown when "by prior and continuous use of a

name for a *long period of time*" the public mind identifies the user of the name (Mesa) with the services performed by it. *MacPhail v. Stevens*, 41 Colo.App. 99, 586 P.2d 1339 (1978). In our view, Mesa's limited promotional use of the name for two months did not satisfy this requirement.

The preliminary injunction is vacated.

SMITH and KELLY, JJ., concur.