567 P.2d 801 (1977)
Tammy S. BEESON, a minor by her husband and next friend, Clarence Mitchell Beeson, Plaintiff-Appellant,
v.
KIOWA COUNTY SCHOOL DISTRICT RE-1, Robert O. Woods, Kiowa County School District Re-1 Superintendent, and the Board of Education of Kiowa County School District Re-1, consisting of Darrell Koch, Gilbert Brown, Dora Lu Gulley, Tyrone Mitchell, Robert E. Weirich, Virgil A. Lessenden, Jr., and Jesse W. James, Jr., Defendants-Appellees.
Nos. 75-916, 76-036.
Colorado Court of Appeals, Div. III.
March 31, 1977.
Rehearing Denied April 28, 1977.
Certiorari Denied August 2, 1977.
*803 Carrigan, Bragg & Dubofsky, P.C., Frank N. Dubofsky, Boulder, Andersen & Gehlhausen, S. Ford Andersen, Lamar, for plaintiff-appellant.
Yegge, Hall & Evans, Paul D. Cooper, Reese Miller, Denver, for defendants-appellees.
RULAND, Judge.
These cases were consolidated for the purpose of this appeal. The issue in case no. 76-036 is whether a school board policy, which prohibits married students from participating in any extracurricular activities, violates the equal protection clause of the Fourteenth Amendment to the United States Constitution.[1] The issue in case no. 75-916 is whether the trial court should have enjoined the school board from enforcing its policy on the basis that it was unconstitutional.
Plaintiff was a senior in high school, married, and the mother of a child at the time she initiated this action seeking to enjoin the school board from enforcing its policy so that she could participate on the girl's varsity basketball team. Following the trial of her complaint for temporary and permanent injunction, plaintiff graduated from high school, and thus we must first address the school board's contention that the issues raised in these appeals are moot.
Generally, when the issues posed in litigation become moot by events subsequent to entry of judgment by the trial court, our appellate courts have declined to render a written opinion on the merits of an appeal from that judgment. See, e. g., Portman v. Housel, 75 Colo. 506, 226 P. 1117 (1924). Thus, we agree that the question of whether an injunction should be granted in no. 75-916 is moot by reason of plaintiff's graduation. Therefore, that appeal is dismissed. As to the appeal in no. 76-036, we note that an exception to the mootness doctrine exists if the issue posed is one of great public importance and involves constitutional rights. See, e. g., Bruce v. Leo, 129 Colo. 129, 267 P.2d 1014 (1954). See also Parker v. People ex rel. Woods, 135 Colo. 206, 309 P.2d 605 (1957). We are persuaded that the constitutional issue must be addressed on this basis. Otherwise a student might never obtain appellate review of such a school policy, either because a particular extracurricular activity has been concluded for a given school year, or because the student graduates prior to conclusion of the litigation. See Board of Directors v. Green, 259 Iowa 1260, 147 N.W.2d 854 (1967). Since we conclude that the policy is constitutionally *804 invalid, we reverse the judgment of the trial court which upheld that policy.
The facts pertinent to this review are not disputed. Plaintiff was a "star player" on the girls' varsity basketball team during her freshman year in high school. However, she married the following summer and a child was born to the married couple during her sophomore year. Plaintiff was aware of the policy at the time she married.
Plaintiff did not seek to participate on the varsity team during either her sophomore or junior years. Plaintiff sought, however, to rejoin the team for her senior year, but was precluded by the school policy from doing so. While she was allowed to practice with the team, she was not allowed to participate in interscholastic competition.
Plaintiff testified that by reason of her inability to compete on the varsity team during her senior year, she lost any opportunity for a college athletic scholarship. She expressed the belief that she would have been offered an athletic scholarship based on her previously demonstrated ability and on the fact that her sister had been offered such a scholarship at sometime in the past.
Various reasons were offered by the members of the school board as the basis for its policy. First and foremost, the board members felt that the policy discouraged teenagers from marrying until after their high school education was completed. On the other hand, some members felt that if a student did marry, that student must be encouraged to devote the time necessary to fulfill the resultant family responsibilities. In the view of these members, prohibiting participation in extracurricular activities was a means to that end. By the same reasoning, they felt that the additional family responsibility left time only for pursuit of a basic education. As to this particular plaintiff, some members expressed the opinion that it was necessary for her to spend as much time as possible with her minor child.
Some board members believed that the policy discouraged unwanted pregnancies. They were also concerned about the influence that a married student could have on other students in promoting a lack of discipline among the students participating in the extracurricular activity. Finally, various members were concerned about the liability the school district might incur if a married woman student participated in athletics and suffered injury while in the process of an undetected pregnancy.
During the course of the trial, there was no challenge to the good faith and concern of the school board in initially adopting this policy some 20 years ago and in maintaining it in effect at the time of plaintiff's request to play varsity basketball. Rather, plaintiff challenged the policy on the basis that it, in effect, punished her for exercising a fundamental right to marry, as well as on the basis that it infringed upon her fundamental right to obtain an education. She also complained that the policy deprived her of the potential opportunity to obtain a college education through the assistance of an athletic scholarship. In response to these contentions, the trial court determined that plaintiff had no fundamental right to marry because the consent of her parents was required at the time of her marriage, that plaintiff had no fundamental right to participate in extracurricular activities, as distinguished from the right to obtain a basic education, and that whether plaintiff could qualify for a college scholarship or whether she even intended to attend college was purely a matter of speculation. The court therefore concluded that the school board's policy was a reasonable regulation as requiring students to choose between the rights and responsibilities of adult married life, and the rights and responsibilities of students "subject to parental guidance and discipline." The court reasoned that "if such a regulation can be successfully challenged, then it is likely the authority of the school board would be almost totally destroyed because almost every regulation which is a condition on a student's right to participate would be a denial of equal protection."
We first emphasize that the issue on appeal is whether the school board's policy is *805 valid in the context of plaintiff being a married student. Therefore, we do not consider the validity of a policy which would preclude plaintiff from participating in extracurricular activities because she was the mother of a young child, or whether a policy would be valid if it required married women to meet certain requirements in order to assure the board that no injuries would result from an undetected pregnancy. The additional considerations inherent in such policies are irrelevant here because the policy at issue excluded plaintiff from participating in extracurricular activities based solely on the fact that she was married.
According to § 14-12-101, C.R.S. 1973, "[i]t is the declared public policy of this state . . . to promote and foster the marriage relationship . . .." We are therefore compelled to hold that the creation of a "marriage relationship" is a fundamental right in this jurisdiction. See also Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).
Nor is this fundamental right vitiated by the fact that plaintiff needed parental consent to enter her marriage. Plaintiff's marriage was entered into in compliance with § 14-2-106, C.R.S. 1973, of the Uniform Marriage Act. That Act has as one of its purposes "to strengthen and preserve the integrity of marriage and to safeguard meaningful family relationships". See § 14-2-102, C.R.S. 1973, and the General Assembly has obviously determined that this purpose is fulfilled, if as here, parental consent for plaintiff's marriage is first obtained. Hence, it is clear that a board policy which discriminates against those who exercise that right violates the equal protection clause of the Fourteenth Amendment, unless there exists a compelling state interest which justifies that discrimination. See Kistler v. Industrial Commission, Colo., 556 P.2d 895 (1976).
The State, acting through the General Assembly, is obligated to provide a "thorough and uniform system of free public school throughout the state, wherein all residents of the state, between the ages of six and twenty-one years, may be educated gratuitously." Colo.Const. Art. IX, Sec. 2. The school district acts as a political subdivision of the State for that purpose. Bagby v. School District No. 1, 186 Colo. 428, 528 P.2d 1299 (1974). As such it is authorized to adopt policies "not inconsistent with law, which may relate to the study, discipline, conduct, safety, and welfare of all pupils". Section 22-32-109(1)(w), C.R.S. 1973 (1976 Supp.). However, we find only one instance wherein the General Assembly has felt compelled to address the issue of marriage in the context of the public schools, and that comes in the form of a prohibition against employment based upon marital status. See § 22-32-110(1)(k), C.R.S. 1973. Hence, we find no specific legislative support for a policy which discriminates against married students.
Looking then to the reasons offered by the school board, we conclude that the acknowledged intent to discourage eligible persons from marrying obviously contravenes the declared public policy of this State "to promote and foster the marriage relationship". See Holt v. Shelton, 341 F.Supp. 821 (M.D.Tenn.1972); Bell v. Lone Oak Independent School District, 507 S.W.2d 636 (Tex.Civ.App.1974). For this reason, we do not view Board of Directors v. Green, supra, and Starkey v. Board of Education, 14 Utah 2d 227, 381 P.2d 718 (1963), relied upon by the board, as persuasive authority in support of the policy before us because neither court considered the right to marry as a fundamental right. Illustrative of the inhibiting effect of the policy is evidence in the record indicating that another star basketball player in the same school district who had fathered a child during his senior year remained eligible for interscholastic competition because he did not marry the mother until after his graduation.
This impact of the policy upon the marriage relationship requires us to consider whether the discrimination created by *806 the board's policy is justified by the need to require married students to focus on their basic education and their family responsibilities by excluding them from extracurricular activities. We find no support for the discrimination here. The focus on basic education can be supplied by a board policy which establishes academic requirements for both married and unmarried students to be eligible for extracurricular activities. On the other hand, the fulfillment of family responsibilities may, in many cases, depend upon further education at the college level, and depriving students of the opportunity to earn a college athletic scholarship, or to participate in extracurricular activities to broaden their general background, could close the door to any opportunity to obtain that education. See Moran v. School District # 7, 350 F.Supp. 1180 (D.Mont.1972). Hence, we cannot justify the policy on this ground alone. See Romans v. Crenshaw, 354 F.Supp. 868 (S.D.Tex.1971).
Finally, we must evaluate the board's contention that married students who participate in extracurricular activities may tend to promote a lack of discipline among the other students and may not be dependable because of their family responsibility. Since the policy has been in effect for approximately 20 years, we understand why no incidents were cited by the board where these problems have arisen. On the other hand, we are unable to perceive why the same policies which govern the discipline and dependability of unmarried students who participate in extracurricular activities would not serve to resolve any such problems. At least we cannot characterize this potential problem, standing alone, as sufficient justification for discrimination against the fundamental right to marry. See Davis v. Meek, 344 F.Supp. 298 (N.D. Ohio 1972).
Accordingly, the judgment of the district court is reversed and the cause remanded with directions to enter judgment declaring the board's policy invalid as a denial of equal protection under the Fourteenth Amendment.
SMITH and BERMAN, JJ., concur.
NOTES
[1] This court has jurisdiction to resolve the constitutional issue because it does not involve a statute, ordinance, or municipal charter provision. See § 13-4-102(1)(b), C.R.S. 1973.