**In re the MARRIAGE OF Carol Linton FINER, Appellant,**

**and**

**Joseph P. Finer, Appellee.**

**No. 94CA0178.**

Colorado Court of Appeals, Div. V.

March 23, 1995.

Quade, Fontana & Bonin, P.C., Frances C. Fontana, Denver, for appellant.

Cox, Mustain–Wood & Walker, Mary Jane Truesdell Cox, Littleton, for appellee.

Opinion by Judge TAUBMAN.

In this dissolution of marriage action, Carol Linton Finer (mother) appeals the trial court's order refusing to hold a hearing to modify the temporary injunction preventing removal of the parties' minor child from the state. Because we agree with mother's contention that the trial court's refusal to hold such a hearing violated her right to due process, we reverse. However, since the temporary injunction prohibiting the removal of the child from Colorado has expired, no remand is warranted.

In September 1992, mother filed a petition for dissolution of her marriage to Joseph P. Finer (father). Mother was granted temporary custody of the only child of the marriage

in October 1992, pending the issuance of permanent orders.

On August 26, 1993, mother requested a hearing seeking relief from the automatic temporary injunction imposed by § 14–10–107(4)(b)(I), C.R.S. (1987 Repl.Vol. 6B) upon the filing of a petition for dissolution of marriage. That injunction prohibited, *inter alia,* the removal of the parties' minor child from the state pending permanent orders .without agreement or prior court order.

In her motion, mother informed the trial court that she was currently unemployed, but had been offered a position as a teacher, her chosen profession, in Delaware. She further asserted that a recent custody evaluation had determined that it was in the child's best interest for the child to remain in her custody and even to leave the state with mother if she accepted that employment opportunity. Nevertheless, the district court refused to hear arguments on mother's request stating that there was insufficient time for it to address her request prior to the scheduled trial date for permanent orders which were set to commence on August 31, 1993.

On that date, the trial court announced that it was unable to hold the hearing on permanent orders and had to reschedule it. Accordingly, mother renewed her request for an immediate hearing, seeking temporary relief from the injunction so that she could accept the teaching position in Delaware and move there with her child.

In response, the trial court stated that, if the parties could limit their arguments to one hour, it could schedule a hearing on mother's motion within three months; however, if they needed more time, a hearing could not be scheduled until spring or summer of 1994. Although mother agreed to a one hour hearing, father professed that he needed at least one day of trial time to rebut mother's motion. The guardian ad litem also asserted that he required more than an hour for the hearing to present his concerns. Consequently, the trial court refused to hear mother's motion.

The permanent orders hearing was rescheduled to commence on July 18, 1994. The trial court, however, noted that earlier trial dates were offered to the parties but provided no explanation regarding why any of the earlier dates had not been selected.

Following the postponement of the permanent orders hearing, wife filed an emergency forthwith motion for temporary removal of the child from Colorado on September 1, 1993. The trial court ruled that it would not bifurcate this issue and permanent custody issues for purposes of administrative efficiency. However, it referred mother's motion to a magistrate.

On October 19, 1993, the magistrate denied mother a hearing because the trial court had previously ruled that the matter not be bifurcated, the issues were pending before the supreme court in a C.A.R. 21 petition, and the magistrate could not set one day aside for a hearing on mother's motion since he only had two-hour blocks of time available. On October 25, 1993, the trial court affirmed the magistrate's order without explanation.

On November 2, 1993, mother filed a motion with the trial court seeking review of the magistrate's order denying her a hearing. The court denied petitioner's motion to review the magistrate's order on December 23, 1993, and this appeal followed.

After this appeal was filed, the permanent orders hearing was held in July 1994 and the court issued its order on August 3, 1994. In the permanent orders, the trial court awarded sole custody of the parties' child to father. In addition, the court made detailed alternative provisions for parenting time and child support to be paid by mother, depending on whether mother remained in Colorado or moved to Delaware. An appeal of the permanent orders has been initiated, but it does not raise the issue presented here.

I. Jurisdiction of Court of Appeals

■ As a threshold matter, we address the issue of whether the court of appeals has jurisdiction over appeals from orders granting or denying preliminary injunctions. Although the issue was not raised by the parties, the court's subject matter jurisdiction cannot be waived and can be raised at any time. *Minto v. Lambert,* 870 P.2d 572 (Colo. App.1993).

In considering the issue, we recognize that an inconsistency has arisen in our recent opinions.

In *Joel L. Schaffer, P.C. v. Christopher M. Sullivan, P.C.*, 844 P.2d 1327 (Colo.App. 1992), a division of this court held that the court of appeals lacked *initial* statutory jurisdiction, pursuant to § 13–4–102(1), C.R.S. (1987 Repl.Vol. 6A), over interlocutory rulings in injunction proceedings because they are not final judgments. *See Harding Glass Co. v. Jones*, 640 P.2d 1123 (Colo.1982). However, a majority of the division concluded that, if such actions first were referred to the supreme court on the question of jurisdiction and if, after referral, the supreme court declined to exercise jurisdiction, jurisdiction then was conferred on this court by § 13–4–110(3), C.R.S. (1987 Repl.Vol. 6A).

In contrast, the dissenting member of the division was of the view that denial of a motion for preliminary injunction is *not* appealable to the court of appeals and that the only review possible is by certiorari under C.A.R. 21. *Joel L. Schaffer v. Christopher M. Sullivan, P.C., supra*, (Jones, J., dissenting).

In recent years, however, at least seven other panels of this court have issued published opinions considering appeals of preliminary injunctions without first referring the jurisdictional issue to the supreme court and without addressing the issue. *See Herstam v. Board of Directors*, —— P.2d —— (Colo. App.1995); *Hughley v. Rocky Mountain Health Maintenance Organization, Inc.*, —— P.2d —— (Colo.App.1995); *City of Aurora v. Board of County Commissioners*, —— P.2d —— (Colo.App.1994); *White v. Department of Institutions*, 883 P.2d 575 (Colo.App.1994); *Network Telecommunications, Inc. v. Boor-Crepeau*, 790 P.2d 901 (Colo.App.1990); *Parrish v. Rocky Mountain Hospital*, 754 P.2d 1180 (Colo.App.1988); *Mesa Springs v. Cutco*, 736 P.2d 1251 (Colo.App.1986). Four of these opinions were issued after *Schaffer* was announced.

Because we concluded initially that the question of our jurisdiction should be referred to the supreme court as in *Schaffer*, we requested that it assume jurisdiction. The supreme court declined to do so.

On further reflection, however, we concluded, for the reasons set forth below, that the result implicitly reached by these seven divisions was correct, and thus, it was unnecessary to follow *Schaffer*.

The Colorado Supreme Court has been given the power to promulgate rules for the courts of record in this state. *See* §§ 13–2–108, 13–2–109, and 13–2–110, C.R.S. (1987 Repl.Vol. 6A); *Kolkman v. People*, 89 Colo. 8, 300 P. 575 (1931) (supreme court is charged with power and duty of formulating, promulgating, and enforcing rules of procedure).

Although the court of appeals is a statutory court, the General Assembly also has conferred on the supreme court specific, exclusive, and final authority to determine whether a case before this court is properly within its jurisdiction. Such authority is set out in § 13–4–110(1)(a), C.R.S. (1987 Repl.Vol. 6A), which provides that: "The supreme court shall decide the question of jurisdiction [between it and the court of appeals] in a summary manner and its determination shall be conclusive."

The Colorado Appellate Rules, promulgated by the supreme court, contain the following statement entitled "Applicability of Rules":

1. These rules of appellate procedure are intended to embrace appeals of both criminal and civil matters.

2. Rules 1 through 48, except where specifically noted otherwise, apply to appeals to either the supreme court or to the court of appeals. Whenever "appellate court" is used it refers to either court.

With certain enumerated exceptions, § 13–4–102(1), C.R.S. (1986 Repl.Vol. 6A) gives the court of appeals initial jurisdiction over appeals from *"final judgments* of the district courts . . . ." (emphasis added)

The companion rule, C.A.R. 1(a), states that:

An appeal to the appellate court may be taken from: (1) A *final judgment* of any district, superior, probate, or juvenile court in all actions or special proceedings wheth-

er governed by these rules or by the statutes.

. . . .

(3) An order granting or denying a preliminary injunction. . . . (emphasis added)

Moreover, C.R.C.P. 54(a) defines "judgment" to include "a decree and order to or from which an appeal lies."

■ Thus, when the jurisdictional statute is read together with the rules issued by the supreme court, the term "final judgment" in § 13–4–102(1) must be interpreted to give the court of appeals initial jurisdiction over any decree and order to or from which an appeal lies that is issued by any district court. This would include an order granting or denying a preliminary injunction.

We therefore hold that the court of appeals does have initial jurisdiction over appeals from orders granting or denying preliminary injunctions. Thus, when such appeals are filed here, it is unnecessary to use the referral mechanism set forth in § 13–4–110(1)(a).

To the extent that *Schaffer* would suggest another result, we decline to follow it. Rather, we adhere to the results implicitly reached by the other seven divisions of this court cited earlier.

## II. Temporary Injunction

■ Predicated on the assumption that the court of appeals has jurisdiction over temporary injunctions, father nevertheless asserts that this court has no jurisdiction to decide this appeal because the trial court had not granted or denied a temporary injunction. We reject this contention and conclude that this is an appeal from a temporary injunction.

C.A.R. 1(a)(3) provides that an appeal may be taken to the appellate court from an order granting or denying a temporary injunction. Here, however, the temporary injunction at issue was automatically imposed by operation of § 14–10–107(4)(b)(I)(C), C.R.S. (1986 Repl. Vol. 6B), which prohibits either party from removing any minor children of the marriage from the state without the consent of the other party or an order of the court. Hence,

father argues that, since this prohibition is a temporary injunction which is created automatically by operation of the statute, it cannot be considered an "order granting or denying a temporary injunction" under C.A.R. 1(a)(3). We know of no reason why not.

Section 14–10–107(4)(b)(I) provides in pertinent part: "Upon the filing of a petition for dissolution of marriage . . . a temporary injunction shall be in effect against both parties until the final decree is entered or the petition is dismissed *or until further order of the court* . . . ." (emphasis added) Furthermore, § 14–10–107(4)(b)(II), C.R.S. (1986 Repl.Vol. 6B) provides that "nothing in this paragraph (b) shall preclude either party from applying to the court for further temporary orders, an expanded temporary injunction, or modification or revocation [of the injunction] . . . ."

Therefore, the trial court had the authority to grant mother temporary relief from the automatic injunction. Since that automatic judgment is equivalent to a preliminary injunction, we conclude that it is an appealable order. Accordingly, we conclude that not only do we have subject matter jurisdiction as discussed in Part I, we have jurisdiction under C.A.R. 1(a)(3) to render a decision in this appeal.

■ Father further argues that, since mother's request to remove the child from the state was for a relatively short duration pending permanent orders, it should actually be deemed a temporary restraining order. Relying on *O'Connell v. Colorado State Bank*, 633 P.2d 511 (Colo.App.1981), he asserts that temporary restraining orders are not appealable because of their short duration. The *O'Connell* court, however, stated that the rationale for denying appeals of temporary restraining orders does not apply to injunctive relief which lasts for a period of more than ten days. Here, the temporary injunction existed for 16 months prior to mother's filing of this appeal and, thus, cannot be compared to a ten-day temporary restraining order.

## III. Mootness

■ Father next contends that this appeal is moot because mother was afforded an op-

portunity during the permanent orders hearing to show why she should be able to move to Delaware with the child. We disagree.

■ Generally, when issues presented in litigation become moot because of subsequent events, appellate courts will decline to render an opinion on the merits of an appeal. A case becomes moot when any judgment rendered therein can have no practical effect upon the existing controversy. *In re Marriage of Hartley*, 886 P.2d 665 (Colo.1994). However, a case need not be deemed moot because an issue is no longer contested. If the issue is one of public importance or concerns an allegedly recurring constitutional violation that might otherwise escape judicial review, it may be considered even if for all practical purposes it has become moot. *Dempsey v. Romer*, 825 P.2d 44 (Colo.1992).

Our courts have not dismissed as moot issues of short duration when they involve temporary authority which has expired, and, therefore, might recur without the possibility of judicial review. For example, in *Gambler's Express, Inc. v. Public Utilities Commission*, 868 P.2d 405 (Colo.1994), in which a common carrier challenged an agency's temporary authority to issue an order granting the carrier's competitor authority to operate, the supreme court found the appeal justiciable, even though the agency's temporary authority had expired.

Similarly, our appellate courts have elected to review other cases even though any judgment rendered would have no practical effect upon the controversy. *See People v. Tyler*, 874 P.2d 1037 (Colo.1994) (holding that the trial court's determination that motion to suppress was untimely was not rendered moot by its consideration of merits of motion); *Dempsey v. Romer, supra* (reviewing the authority of the General Assembly and the state personnel director to establish maximum salary levels of state employees even though statutory amendments subsequent to appeal had rendered the case otherwise moot); *Urevich v. Woodard*, 667 P.2d 760 (Colo.1983) (reviewing declaratory judgment entered relative to statute governing procedure to place an initiative on the ballot even though election had already occurred); *Beeson v. Kiowa County School District*, 39 Colo.App. 174, 567 P.2d 801 (1977) (electing to review the constitutionality of a school board policy which prohibited married students from participating in extracurricular activities, notwithstanding that the case was moot because student who initiated the action had already graduated).

The questions raised herein concerning the trial court's authority to deny mother a hearing on whether to grant her temporary relief from the automatic injunction require adjudication of constitutional issues that may well recur yet escape judicial review because temporary injunctions in marriage dissolution cases normally terminate on or before the entry of permanent orders. *See In re Marriage of Goellner*, 770 P.2d 1387 (Colo.App. 1989) (holding that trial court denied wife a full and fair hearing by allowing her only one-half hour in which to present her case); *Halliburton v. County Court*, 672 P.2d 1006 (Colo.1983) (a trial court abused its discretion by repeatedly delaying a trial).

Here, while it is true that any injury sustained by mother is, as a practical matter, irremediable, and that the precise factual circumstances will not likely recur with respect to mother, the underlying substantive question is one of a recurring nature that might otherwise escape judicial review.

We note in this regard that mother filed a C.A.R. 21 proceeding with the supreme court to challenge the trial court's failure to hold a hearing. However, after issuing a rule to show cause, the supreme court discharged it as improvidently granted.

Further, because of the relatively short duration between the filing of a petition for dissolution of marriage, which gives rise to a temporary injunction under § 14–10–107(4)(b)(I), C.R.S. (1986 Repl.Vol. 6B), and the permanent orders hearing, the asserted denial of due process at issue could always escape judicial review. Accordingly, we elect to address the issues raised so as to establish precedent for future action by trial courts. *See Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission*, 620 P.2d 1051 (Colo. 1980).

## IV. Jurisdiction Before Final Judgment Has Been Entered

Father also asserts, apart from his argument in part II above, that this court does not have jurisdiction to resolve this appeal because the trial court had not entered final judgment in this dissolution of marriage action. We reject his argument.

██ As previously noted, we have concluded that, under C.A.R. 1(a)(3), an appeal may be taken from the granting or denying of a temporary injunction even if there has been no final judgment entered. Accordingly, this court does have jurisdiction to render a decision in this appeal even in the absence of the trial court entering final judgment.

## V. Due Process

██ Mother contends that the trial court denied both her procedural and substantive right to due process. She asserts that she was denied procedural due process because the trial court refused to hold a hearing on her motion to remove the parties' child from the state. We agree with this assertion, and, thus, do not address her allegations concerning denial of substantive due process.

██ The guiding principle here is that the opportunity to be heard, an inherent element of due process, must be granted at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

Father, however, contends that, since the trial court had discretion under C.R.C.P. 121 § 1-15 concerning whether to schedule an evidentiary hearing on mother's motion, due process does not apply because she did not have a constitutional right to a hearing.

Father cites *City & County of Denver v. Ameritrust Co.*, 832 P.2d 1054 (Colo.App. 1992) and *Herrera v. Anderson*, 736 P.2d 416 (Colo.App.1987) for the proposition that it is within the trial court's discretion to allow an evidentiary hearing on any written motion. However, those cases are distinguishable.

In *Ameritrust*, there were no material facts in dispute and the appellant had not requested a hearing; thus, it was held that the trial court's exercise of discretion did not

unconstitutionally deny the appellant the opportunity to be heard. Similarly, in *Herrera*, the trial court's decision not to hold a hearing was affirmed because of the lack of evidence in the record to show that an oral argument had been requested and the moving party's failure to pursue the motion indicated abandonment.

██ In determining what due process requires, a court must balance the following: the kind of private interest at stake; the risk of an erroneous deprivation of that interest and the probable value of additional or substitute procedures in reducing the risk; and the public or governmental interest involved and the fiscal and administrative burden additional procedural requirements would entail. *Patterson v. Cronin*, 650 P.2d 531 (Colo.1982).

Here, the constitutional right to travel and the right to pursue employment opportunities where they arise are the private interests at stake. Without a hearing on this issue, mother was denied the opportunity to present evidence to the court that her child's best interests would be protected and, indeed, enhanced if she were allowed to move to Delaware; thus, the risk of an erroneous deprivation of that interest was substantial.

The public interest involved concerns determining what is in the best interest of the parties and their children in a dissolution of marriage action. That determination cannot be accomplished without a hearing. Finally, an additional temporary orders hearing would not be a significant burden on the trial court because it would have required at most a one-day hearing.

The trial court stated that overcrowded dockets and the fact that mother would eventually be afforded a hearing at the time of the permanent orders hearing were the reasons that it refused to grant her a hearing on the motion. Her request for a hearing was further delayed because the father's counsel and the guardian ad litem both indicated that they would need more than two hours to present their evidence on this motion. We are unpersuaded that these matters justified the denial of a hearing.

 To assist the trial court in managing its dockets, counsel have a duty to make an accurate estimate, as nearly as possible, of the time required to try a case or argue a motion. Nevertheless, regardless of overcrowded dockets and the trial court's obligation to move matters before it as rapidly as possible, litigants are entitled to have sufficient time to make an orderly presentation of their case. *See In re Marriage of Goellner, supra; Halliburton v. County Court, supra.* Here, the trial court informed the parties that, only if they could limit their arguments to one hour, could it hear them within a relatively short time.

Mother made repeated requests of the trial court to hold a hearing because there were material facts in dispute. However, the trial court ordered that the issue not be bifurcated and delayed a hearing on the issue for nearly eleven months. When the trial court eventually addressed mother's motion at the permanent orders hearing, it made detailed alternative awards which were contingent upon whether she remained in Colorado or moved to Delaware. The court could have made similar orders at an earlier date, but it elected not to do so.

Further, the magistrate informed the parties that arguments on motions such as these were normally limited to two-hour segments. Mother stated that the court or the magistrate could hear the arguments on her motion and rule on that motion within those time limitations. However, because both father's counsel and the guardian ad litem requested substantially more time, the magistrate refused to grant mother any hearing whatsoever, and the trial court affirmed its decision.

Instead of refusing to grant mother a hearing, the trial court could have exercised its discretion and scheduled a timely hearing for some time between one hour and one day. It could have bifurcated the hearing so that the evidence was presented over a series of days. However, because the trial court refused to allow mother any hearing whatsoever, we conclude that it violated her due process rights. *See In re Marriage of Goellner, supra; Monroe Division, Litton Business Systems, Inc. v. De Bari,* 562 F.2d 30 (10th Cir.1977) (under circumstances showing material fact dispute as to damages sustained by party requesting hearing, the trial court violated that party's right to due process by refusing to hold a hearing).

 Additionally, in our view, the Uniform Marriage and Dissolution Act compels the same result. As noted above, that act imposes a temporary injunction restraining the parties from removing minor children of the marriage from the state without consent or court order, but such injunction may be modified or revoked by order of the court before the entry of permanent orders. Therefore, the statute also implicitly required the trial court to schedule a timely hearing on mother's motion.

 We decline both parties' requests that we award costs and attorney fees under § 13–17–102, C.R.S. (1987 Repl.Vol. 6A) and C.A.R. 38(d).

Accordingly, the order denying mother's motion for a prompt hearing on her request for modification of the statutory temporary injunction is reversed.

RULAND, J., concurs.

BRIGGS, J., dissents.

Judge BRIGGS dissenting.

The mother sought to modify the statutorily imposed injunction to allow her to remove the minor child from the state temporarily. The trial court denied a hearing on that motion, but it subsequently held a hearing on permanent orders and entered a judgment granting sole custody of the child to the father. Under these circumstances, even if the court of appeals has jurisdiction to address the appeal as an appeal from the grant of a temporary injunction, this appeal is moot and does not require our consideration. I therefore respectfully dissent.

As the majority recognizes, our decision can have no practical effect on the controversy. Thus, the case is moot, and we may consider it only if the question to be resolved is one of great public importance or of constitutional significance of a recurring nature that might otherwise escape judicial review.

**1390**

*See Dempsey v. Romer,* 825 P.2d 44 (Colo. 1992).

The seriousness of denying a hearing when a litigant may otherwise incur irreparable harm is obvious and needs no explication. Further, the courts of this state are well aware of the need to provide due process when process is due. In those isolated circumstances in which a court fails to follow appropriate procedure, an aggrieved party may, as the mother did here, seek a writ of prohibition from the supreme court pursuant to C.A.R. 21.

I would therefore dismiss the appeal as moot.