Dan GROSSMAN, as Colorado House Minority Leader, Plaintiff–Appellant,

v.

Doug DEAN, as Speaker of the House, Colorado General Assembly; Lola Spradley, as Colorado House Majority Leader; Bill Cadman, as Colorado State Representative; Lauri Clapp, as Colorado State Representative; Bill Crane, as Colorado State Representative; David Schultheis, as Colorado State Representative; and William D. Sinclair, as Colorado State Representative, Defendants–Appellees.

No. 02CA1219.

Colorado Court of Appeals, Div. I.

Oct. 23, 2003.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

Ballard, Spahr, Andrews & Ingersoll, LLP, Michael E. Lindsay, A. Thomas Downey, Andrew C. Testerman, Denver, Colorado, for Plaintiff–Appellant.

Hale Hackstaff Friesen, LLP, Richard A. Westfall, Denver, Colorado, for Defendants–Appellees.

Schwarz, Semenoff, McNab & Bailey, P.C., Christopher M. Kamper, Denver, Colorado, for Amicus Curiae Common Cause of Colorado.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Colorado, for Amicus Curiae Colorado League of Women Voters.

Opinion by Judge LOEB.

Plaintiff, Dan Grossman, as Colorado House Minority Leader, appeals the trial court's judgment dismissing his complaint against the Colorado General Assembly; Doug Dean, as Speaker of the House; Lola Spradley, as House Majority Leader; and Bill Cadman, Lauri Clapp, Bill Crane, David Schultheis, and William D. Sinclair, as Colorado State Representatives. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff sought a declaratory judgment that the use of a "supermotion" pursuant to House Rule 25(j)(1)(G) to kill a proposed bill without prior committee consideration on the merits of the bill violates the GAVEL Amendment, Colo. Const. art. V, § 20. He also sought a declaration that three specific uses of the supermotion in this way by representatives of the majority party in the House be deemed null and void.

Defendants filed a motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5). The trial court granted the motion, finding that the House Rule complied with the GAVEL amendment and that the relief requested, if granted, would constitute an injunction and would therefore improperly interfere with legislative functions. This appeal followed.

GAVEL, which stands for "Give A Vote to Every Legislator," is a group of amendments to the Colorado Constitution passed in 1988 by ballot initiative. The amendments were designed to correct certain perceived abuses in the legislative process.

The GAVEL amendment at issue in this case states, in pertinent part:

> Every measure referred to a committee of reference of either house shall be considered by the committee upon its merits, and no rule of either house shall deny the opportunity for consideration and vote by a committee of reference upon such a measure within appropriate deadlines. A motion that the committee report the measure favorably to the committee of the whole, with or without amendments, shall always be in order within appropriate deadlines.

Colo. Const. art. V, § 20.

House Rule 25(j)(1)(G), promulgated soon after the GAVEL amendments were passed, provides that a representative may make a motion out of order, commonly called a supermotion, that a committee report a measure favorably to the full House of Representatives, otherwise known as the committee of the whole. The House Rule states:

> If a motion is made that a committee report a measure favorably to the committee of the whole ... when such measure is not in the order of business ... then such measure shall be considered by the committee upon its merits. If such motion fails to pass, the failure of such motion to pass shall have the same effect in all respects as the adoption of a motion that consideration of the measure be indefinitely postponed.

A motion that a committee report a measure favorably to the full House is a standard motion that a bill's supporter normally makes after a committee conducts a hearing on the bill. Such a motion becomes a supermotion under the GAVEL amendment and the House Rule when it is made out of order of the calendared business of the committee.

When a supermotion is made, the House Rule requires that the measure be "considered by the committee on its merits." If the supermotion fails to pass, the measure is deemed "indefinitely postponed," and the bill is not subsequently considered during the session; in other words, the bill is killed in committee.

The complaint alleges that, during the 2002 regular session, three bills sponsored by Democratic members of the House minority were referred to committee. At each committee meeting, members of the public were prepared to testify in favor of the proposed legislation. In each committee, a Republican member of the House majority who was opposed to the bill made a supermotion that the bill be reported favorably to the committee of the whole, but requested a "no" vote on the motion. In each instance, no committee discussion or debate occurred, and no testimony was received on the merits of the measure. A vote was then taken on each supermotion, and each failed along party lines. The failures had the effect of indefinitely postponing each bill.

One bill that was indefinitely postponed in this manner was HCR 1009, which was introduced and sponsored by plaintiff and supported by Colorado Common Cause, amicus curiae here. HCR 1009 would have placed a campaign finance reform proposal on the ballot for the 2002 election. The other two bills referenced in the complaint were sponsored by other members of the minority party.

Plaintiff concedes on appeal that, because the 2002 legislative session has ended, his second claim for relief, seeking a declaratory judgment that the permanent tabling of the three proposed bills be deemed null and void, is moot. However, he maintains that the trial court erred in dismissing his first claim for relief, seeking a declaratory judgment that the use of the supermotions here violated the GAVEL amendment and therefore was unconstitutional. We agree that dismissal was not warranted.

When reviewing a motion to dismiss under C.R.C.P. 12(b)(5), a court must accept all allegations of material fact as true and view the allegations in the complaint in the light most favorable to the plaintiff. We review a trial court's ruling on a motion to dismiss de novo. *Pub. Serv. Co. v. Van Wyk,* 27 P.3d 377 (Colo.2001).

## I. Justiciability

Initially, we address defendants' contention that this case is not justiciable for three

reasons: (1) plaintiff lacks standing; (2) the case is moot; and (3) the claims improperly interfere with the activities of the legislature and therefore violate the political question doctrine. We disagree with each contention.

## A. Standing

First, we address defendants' argument that plaintiff lacks standing to bring this action.

■ Standing is a jurisdictional prerequisite that requires a named plaintiff to bring suit only to protect a cognizable interest. *Friends of Black Forest Reg'l Park, Inc. v. Bd. of County Comm'rs*, 80 P.3d 871, 2003 WL 1923823 (Colo.App. No. 01CA2253, Apr. 24, 2003). Whether a plaintiff has standing is determined as of the time the action is filed. *See Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 709, 145 L.Ed.2d 610 (2000); *cf. Miller v. Accelerated Bureau of Collections, Inc.*, 932 P.2d 824 (Colo.App.1996)(plaintiff not having standing at the outset of litigation may later acquire it; standing would then relate back to commencement of proceeding).

■ To determine standing, we must consider (1) whether the plaintiff was injured in fact, and (2) whether the injury was to a legally protected right. *Romer v. Colo. Gen. Assembly*, 810 P.2d 215, 218 (Colo.1991).

■ Injury in fact may be proved by showing that the action complained of has caused or has threatened to cause injury. *See Romer v. Colo. Gen. Assembly, supra.* The requirement that the injury be to a legally protected interest "is grounded on prudential considerations of judicial self restraint." *Romer v. Colo. Gen. Assembly*, 810 P.2d at 218 (quoting *Colo. Gen. Assembly v. Lamm*, 700 P.2d 508, 516 (Colo.1985)(*Lamm I*)). The question is whether the plaintiff is protected by law from the alleged injury; this determination is "inextricably tied" to the merits of the dispute. *See Lamm I, supra.*

■ Initially, we disagree with defendants that plaintiff lacks standing because he is no longer in the House of Representatives.

Plaintiff was a member of the House when the complaint was filed, and his standing to bring this action is determined as of that time. *See Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., supra.*

■ Here, plaintiff has adequately alleged a legally protected interest. GAVEL specifically creates a legally protected right for each legislator to have a committee of reference consider and vote on a bill on its merits. Plaintiff's allegation that the committee to which his bill was assigned was deprived of the opportunity to consider that bill on its merits sufficiently alleges an injury to a legally protected interest. *See Romer v. Colo. Gen. Assembly, supra* (governor alleged an injury in fact to his legally protected interest in his constitutional power to veto provisions of an appropriations bill); *Maurer v. Young Life*, 779 P.2d 1317 (Colo.1989)(legally protected interest is recognized where created by statutory or constitutional provision).

■ Plaintiff has also adequately alleged injury in fact because, as a member of the House and as the sponsoring legislator of HCR 1009 when the suit was filed, he asserts that he was deprived of the opportunity to have his bill considered on its merits and voted on by the committee of reference, as mandated by the GAVEL amendment. *See Colo. Gen. Assembly v. Lamm*, 704 P.2d 1371 (Colo.1985)(*Lamm II*)(legislature suffered an injury in fact as a result of governor's exercise of his line item veto power); *Lamm I, supra* (legislature had standing to bring suit against governor challenging transfer of funds between executive offices in violation of legislature's power of appropriation).

■ However, in contrast to his alleged injury in fact concerning HCR 1009, plaintiff has not alleged injury in fact with respect to the two bills he did not sponsor, although he does have a legally protected interest created by GAVEL.

■ Moreover, we reject plaintiff's further contention that, solely by virtue of his position as House Minority Leader, he has standing to challenge defendants' use of the House Rule to kill all three bills, including the two bills that he did not individually sponsor. We have not found any support

under Colorado law for this contention and thus conclude that plaintiff's position as House Minority Leader, by itself, does not provide a basis for standing to pursue this action. We therefore affirm the trial court's dismissal of the complaint insofar as it concerns the two bills that plaintiff did not sponsor.

Nevertheless, because plaintiff has sufficiently alleged injury in fact to a legally protected interest based on his status as the sponsoring representative of HCR 1009, he has standing to pursue this action for a declaratory judgment with respect to that bill.

We disagree with defendants that *Raines v. Byrd*, 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), compels a different result. In *Raines v. Byrd*, the United States Supreme Court held that individual members of Congress did not have standing to challenge the constitutionality of the Line Item Veto Act.

Although federal decisions may be considered for guidance, we are ultimately governed here by state principles of standing, rather than the federal principles created by Article III of the United States Constitution and addressed in *Raines v. Byrd. See Maurer v. Young Life, supra* 779 P.2d at 1324 n. 10 (federal court doctrine of standing has different constitutional basis and is not coextensive with Colorado standing inquiry); *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977)(state courts are not subject to provisions of Article III of United States Constitution).

On several occasions, the Colorado Supreme Court has upheld the standing of public officials under Colorado law to bring litigation alleging injury to their official interests. *See Romer v. Colo. Gen. Assembly, supra* (governor had standing to sue legislature concerning veto override procedures); *Lamm II, supra* (under Colorado principles of standing, the legislature had standing to challenge the governor's exercise of his line item veto power); *Lamm I, supra* (under Colorado principles of standing, legislature had standing to bring suit against governor challenging transfer of funds between executive offices in violation of legislature's power of appropriation). These cases reflect a more expansive view of standing under Colorado law than that expressed under federal law in *Raines*. Indeed, the concurrence in *Raines* specifically cites *Lamm II, supra*, as support for the proposition that the parties in *Raines* arguably suffered an injury in fact. *See Raines v. Byrd, supra*, 521 U.S. at 833, 117 S.Ct. at 2324 (Souter, J., concurring).

In addition, *Raines* is distinguishable from this case in two important respects. First, *Raines* involved legislation that had been validly passed by Congress and was being challenged as unconstitutional by individual members of Congress who had voted against the legislation. Here, HCR 1009 was allegedly killed in committee in violation of the GAVEL amendment without receiving committee consideration and a vote on its merits, and it is the method by which that bill was killed that is being challenged, rather than the substance of the legislation itself.

Indeed, *Raines* acknowledges that individual legislators may have standing in circumstances where their votes are deprived of validity. *See Raines v. Byrd, supra*, 521 U.S. at 823, 117 S.Ct. at 2319 (distinguishing *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939)(legislators have standing to challenge ratification of amendment to federal constitution effectuated through governor's deciding vote)). Here, plaintiff contends that the committee vote killing HCR 1009 was essentially invalid because the measure was not considered by the committee on its merits, as required by GAVEL.

Second, the holding in *Raines* is premised, in large part, on the principle that, to support standing, a plaintiff's complaint must establish that plaintiff has a personal stake in the alleged dispute and that the alleged injury is particularized as to the plaintiff. *Raines v. Byrd, supra*, 521 U.S. at 819, 117 S.Ct. at 2317. The plaintiffs in *Raines* had no particular stake in the dispute; they simply had voted against the legislation being challenged. Here, in contrast, plaintiff proposed and sponsored HCR 1009 and alleges that he was specifically injured because defendants

denied him the right to have the committee consider and vote on his bill on its merits.

Accordingly, we conclude that plaintiff has standing to bring this action with respect to HCR 1009.

### B. Mootness

■ As discussed above, plaintiff concedes that his second claim for relief is moot because the 2002 legislative session has ended. However, defendants contend that the first claim for relief for a declaratory judgment challenging the constitutionality of the use of the supermotion here is also moot for the same reason. We are not persuaded.

■ Ordinarily, a court invokes its judicial power only when an actual controversy exists between adverse parties. An issue becomes moot when the relief granted by the court would not have a practical effect upon an existing controversy. When an issue is moot, a court normally refrains from addressing it. *Trinidad Sch. Dist. No. 1 v. Lopez*, 963 P.2d 1095 (Colo.1998).

■ There are two exceptions to the mootness doctrine. First, a court may resolve what is an otherwise moot case when the issue involved is one that is capable of repetition, yet evading review. Second, a court may decide a moot case involving issues of great public importance or recurring constitutional violations. *Dempsey v. Romer*, 825 P.2d 44 (Colo.1992); *Campbell v. Meyer*, 883 P.2d 617 (Colo.App.1994).

We conclude that both exceptions to the mootness doctrine apply here.

First, this case involves an issue that is capable of repetition, yet evading review. Because the supermotion, as allegedly utilized here, is the product of a House rule that is still in effect, the actions that allegedly occurred here are capable of being repeated. *See Russell v. City of Central*, 892 P.2d 432, 436 (Colo.App.1995)(declaratory judgment action challenging amendment is capable of repetition yet evading review where amendment can be applied in future); *see also Cloverleaf Kennel Club, Inc. v. Colo. Racing Comm'n*, 620 P.2d 1051, 1054 (Colo. 1980)(case capable of repetition yet evading review despite fact that precise factual circumstances in which controversy arose are unlikely to recur); *cf. Freedom from Religion Found., Inc. v. Romer*, 921 P.2d 84, 88 (Colo.App.1996)(issue not capable of repetition yet evading review where plaintiffs did not seek a declaration as to any general statute, ordinance, or regulation that might be applied in future situations).

Furthermore, although plaintiff brought his case soon after his bill was killed in committee, the length of the appeals process is such that the legislative session ended before this case was at issue before us. Because the legislative session is limited to 120 days, *see* Colo. Const. art. V, § 7, in almost all instances, the session would end before this court could reach a decision. *See Trinidad Sch. Dist. No. 1 v. Lopez, supra* (action capable of repetition yet evading review even though some students possibly would be able to initiate and litigate a case through appellate review prior to graduation where named plaintiff had graduated during the litigation process); *In re Marriage of Finer*, 893 P.2d 1381, 1387 (Colo.App.1995)(review of temporary injunction not moot because of short duration of injunction prior to entry of permanent orders).

In addition, the issues here are of great public importance. The case involves the interpretation of a state constitutional amendment adopted by ballot initiative. It also implicates the public's ability to petition the government for redress and the ability of representatives to serve their constituents in accordance with the requirements of the GAVEL amendments. *See Humphrey v. Southwestern Dev. Co.*, 734 P.2d 637 (Colo.1987)(resolution of significant jurisdictional dispute affects future water court proceedings, is of statewide public importance, and is therefore not moot); *Englewood Police Benefit Ass'n v. City of Englewood*, 811 P.2d 464 (Colo.App.1990)(issue whether city may hold special election on same day as municipal general election is a matter of great public concern and therefore not moot).

### C. Political Question

■ Defendants also contend that we should not address the merits of plaintiff's

claim because to do so would encroach on the province of the legislature. We disagree.

■ A request that the court enjoin conduct by the legislature generally entails an improper intrusion into legislative affairs, but a request for a declaratory judgment that an action is unconstitutional may be addressed by the court. *See Colo. Common Cause v. Bledsoe*, 810 P.2d 201 (Colo.1991)(*Common Cause*).

In *Common Cause*, the plaintiff requested both a declaratory judgment that the majority caucus's actions violated another provision of the GAVEL amendments and injunctive relief prohibiting the caucus from violating that provision in the future. The court cautioned against the judiciary infringing on the powers and duties of a coequal branch of government, but found that the interpretation of constitutional provisions in that case did not present a nonjusticiable political question.

■ Similarly, here, we are asked to interpret a constitutional amendment and to determine whether the application of the House Rule violates that amendment. As in *Common Cause*, our interpretation of the constitution and the House Rule in no way infringes on the powers and duties of a coequal branch of government. Indeed, interpretation of the constitution is peculiarly within the province of the judiciary. *Lamm II, supra*, 704 P.2d at 1378 (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)).

Moreover, in *Common Cause, supra*, 810 P.2d at 211, although the court found that the claim for injunctive relief was properly dismissed, the court stated that "declaratory-judgment actions do not present the same kind or degree of affirmative interference with legislative activities."

Here, as in *Common Cause*, the trial court dismissed both of plaintiff's claims, finding that they were in essence requests for injunctive relief. We agree with plaintiff that the dismissal on this basis was error. Plaintiff seeks a declaratory judgment that defendants' actions, in utilizing the supermotion as alleged here, violated the GAVEL amendment to article 5, section 20 of the Colorado

Constitution. This claim seeks declaratory, not injunctive, relief and therefore can and should be addressed on its merits. *See Common Cause, supra; see also* Colo. Const. art. V, § 22b (providing remedy for violations of GAVEL amendments).

### D. Motion For Substitution

■ Pursuant to CAR 43, plaintiff has moved to substitute former Representative Jennifer Veiga, his successor as House Minority Leader, as the named plaintiff in this case. We deny the motion.

There is no allegation that Representative Veiga was the sponsor of any of the bills at issue in this case and thus suffered any injury in fact. Because we have concluded that plaintiff does not have standing based solely on his status as House Minority Leader, but that his standing to pursue this action is based on his status as sponsor of HCR 1009, it is thus neither necessary nor appropriate to substitute Representative Veiga as a named plaintiff.

### II. Analysis of Plaintiff's Claim

We now turn to the substance of plaintiff's constitutional claim.

■ Plaintiff contends that article V, section 20, as amended by GAVEL, requires some level of committee discussion, debate, or testimony on the merits of each measure prior to a committee vote and that defendants' use of the supermotion here violates that amendment because it allowed HCR 1009 to be indefinitely postponed without any discussion, debate, testimony, or similar committee consideration of the merits of the bill. Defendants contend that the language of section 20 as amended does not require discussion, debate, or testimony in a committee of reference and that a vote on a supermotion under the House Rule, by itself, constitutes consideration and vote on the merits. We agree with plaintiff.

### A. Interpretation of Section 20

Plaintiff interprets the amendment to section 20 to require both "consideration and a vote by a committee" and further argues that

"consideration" means something more than a vote on the supermotion made here. Defendants argue that the amendment's requirement of "consideration" is met by each member of the committee voting on the supermotion because, in order to vote, each individual member must necessarily "consider" the bill. We are not persuaded by defendants' interpretation.

■■■ When interpreting a constitutional amendment, we should ascertain and give effect to the intent of those who adopted it. When, as here, the provision was adopted by popular vote, we must determine what the voters believed the language of the amendment meant when they approved it, by giving the language the natural and popular meaning usually understood by the voters. *Bd. of County Comm'rs v. City & County of Broomfield,* 62 P.3d 1086, 1088 (Colo.App. 2002).

■■■ Moreover, we must liberally construe the GAVEL amendment to effectuate its purpose. *Common Cause, supra,* 810 P.2d at 210. Courts should not engage in a narrow or technical reading of language contained in a constitutional amendment if such a reading would defeat the intent of the voters. If the intent of the voters is not clear from an amendment's language, courts should consider the amendment as a whole and construe it in light of the objective it seeks to achieve and the mischief it seeks to avoid. *Zaner v. City of Brighton,* 917 P.2d 280, 283 (Colo.1996); *Bd. of County Comm'rs v. City & County of Broomfield, supra.* We are obligated to construe the constitution in such a manner as will prevent an evasion of its legitimate operation. *Common Cause, supra,* 810 P.2d at 207.

The plain language of the GAVEL amendment at issue here supports plaintiff's contention that the voters intended to require something beyond a mere vote on a bill. The amendment specifically states that both committee consideration and a vote are required. It requires that every measure "shall be considered by the committee upon its merits" and that no rule shall deny "consideration and vote by a committee of reference." We do not read "consideration" as merely implicit in every vote. To do so would render the

language redundant. *See Colo. Comp. Ins. Auth. v. Jorgensen,* 992 P.2d 1156 (Colo.2000) (interpretations that render statutory provisions redundant and superfluous should be avoided). By including the word "consideration," the electorate must have intended that a committee of reference engage in some activity in addition to a simple vote. *See People v. Woellhaf,* —— P.3d ——, 2003 WL 21403159 (Colo.App. No. 00CA2351, June 19, 2003)(in interpreting a statute, a court will not follow construction that defeats legislative intent or leads to an unreasonable or absurd result; a court should endeavor to give effect to each word in a statute).

In addition, the plain language of the amendment requires that every measure "be considered by the committee." Consideration by the committee as a group necessarily involves something more than the individual mental process of each legislator and requires some kind of interaction and communication among the members of the committee.

■■ When interpreting a constitutional amendment, we may look to the explanatory publication of the Legislative Council of the Colorado General Assembly, otherwise known as the Blue Book. While not binding, the Blue Book provides important insight into the electorate's understanding of the amendment when it was passed and also shows the public's intentions in adopting the amendment. *See Macravey v. Hamilton,* 898 P.2d 1076 (Colo.1995)(the Blue Book provides helpful source equivalent to the legislative history of a proposed amendment); *Common Cause, supra,* 810 P.2d at 209; *Bd. of County Comm'rs v. City & County of Broomfield, supra.*

The Blue Book supports the conclusion that the public intended consideration and a vote to be two separate requirements. *See* Colorado Legislative Council, Research Pub. No. 326, *An Analysis of 1988 Ballot Proposals* (1988)(*Blue Book*); *Common Cause, supra* (expressly relying on the Blue Book for interpretation of GAVEL).

According to the Blue Book, the proponents of the GAVEL amendment to section 20 believed that it would require that "all

bills will be afforded a hearing before a committee." The Blue Book further stated that committee chairpersons would not be able to deny committee members "the right to hear and vote on a certain piece of legislation," and "citizens should not be denied the right to testify in favor of or against legislation" because the bill was disfavored by the committee chair or by the majority party's political philosophy. Hence, the proponents of the GAVEL amendments understood that the amendment at issue here would ensure that bills referred to a committee could not be killed procedurally without first having some kind of hearing or committee interaction and allowing an opportunity for the public to give testimony, if appropriate. *Blue Book, supra,* at 20.

Further, the Blue Book noted that opponents and critics of the GAVEL amendment to section 20 argued that "a requirement that all bills be afforded a hearing would lengthen the legislative session." *See Blue Book, supra,* at 21. Thus, even the amendment's opponents appeared to agree that the amendment, if adopted, would require some kind of interactive consideration by a committee on every bill.

■ This interpretation is also consistent with the objectives the amendment sought to achieve and the mischief it sought to avoid. The GAVEL amendments were intended to correct three perceived abuses of the legislative process relating to (1) the power of a committee chair to withhold action on a bill, in effect "killing it"; (2) the system by which bills were scheduled for debate that permitted the Rules Committee to "kill" a bill by choosing not to schedule it for floor debate within certain deadlines; and (3) the system of party caucus positions, whereby members of a political party agree in advance to vote in a particular way. *Common Cause, supra,* 810 P.2d at 210.

The amendment to section 20 was designed to correct the first listed abuse, and that abuse itself had two perceived aspects: (1) the power of a committee chair to kill a bill in committee by not scheduling it for hearing, and (2) the power of a committee chair to kill a bill in committee by not bringing it to a vote after a hearing. *See Blue Book, supra,*

at 20. The first aspect was addressed in the GAVEL amendment to section 20 by the sentence, "Every measure referred to a committee of reference of either house shall be considered by the committee upon its merits." The second aspect was addressed by the amendment's proscription that "no rule of either house shall deny the opportunity for consideration and vote by a committee of reference upon such a measure." Moreover, under the amendment, a committee chair would also be prohibited from allowing debate, but then limiting action on a bill by excluding a motion that the bill be reported favorably to the full House. Hence, the amendment provides that "[a] motion that the committee report the measure favorably to the committee of the whole . . . shall always be in order."

■ Thus, as pertinent here, the GAVEL amendment to section 20 was intended both to prevent a committee chair from killing a bill without the committee first considering its merits and to prevent a committee chair, after a bill had been so considered, from refusing to call the bill to a vote in committee. Therefore, the specific evils the amendment was intended to remedy involved the deprivation of both consideration and a vote, not merely a vote.

Further, while the GAVEL amendment to section 20 does not explicitly contain the words "testimony," "debate," or "hearing," the intent of GAVEL in requiring "consideration" was that legislators be precluded from completely prohibiting interactive committee consideration of the merits of a bill, which interaction normally includes some level of discussion, debate, or testimony.

■ However, we need not interpret the GAVEL amendment to mandate any specific form of committee consideration in every situation. The amendment is intentionally general and leaves the General Assembly to determine, on a case-by-case basis, the level of discussion, debate, or testimony that is required. *See* House Rule 25(j)(1)(E 2) ("The chairman of each committee of reference may limit testimony and discussion on a measure to that which is adequate, in the

chairman's discretion, to enable the committee to consider the measure on its merits.").

In some cases, a full hearing with public testimony and committee debate may be appropriate. In other cases, mere debate may suffice. In yet other cases, a simple presentation to the committee on the merits of a bill by its sponsor may be enough. Various other alternatives might be consistent with the constitution as well. We conclude here only that some committee consideration on the merits is required and that actions that preclude such consideration violate the GAVEL amendment.

Indeed, plaintiff asks us only to determine whether defendants' actions, as alleged in the complaint, violated the intent of the electorate in adopting the GAVEL amendment to section 20. Any more detailed delineation of the specific requirements of "consideration" is not necessary here and is better left to the General Assembly in the first instance. *See* Colo. Const. art. V, § 12 (each house shall have the power to determine the rules of its proceedings).

Accordingly, we conclude that "consideration on the merits" contemplates, at a minimum, some interactive consideration by members of a committee and that each measure must be so considered before being voted on by the committee on its merits.

## B. Constitutionality of House Rule 25(j)(1)(G)

Given this interpretation of the amendment to section 20, we must address the parties' further arguments concerning whether the House Rule, on its face, violates section 20. We conclude that it does not.

We presume that a rule is constitutional on its face. *See Woldt v. People,* 64 P.3d 256, 266 (Colo.2003)(determining constitutionality of a statute). We should not seek out reasons to invalidate a rule, but rather, we should interpret it to preserve its validity. *See People v. Gonzales,* 188 Colo. 272, 275, 534 P.2d 626 (1975)(same). A rule is facially unconstitutional only if no conceivable set of circumstances exists under which it may be applied in a constitutionally permissible manner. *See Woldt v. People, supra.*

House Rule 25(j)(1)(G) specifically provides that when a supermotion is made to report a measure favorably to the full House, "such measure shall be considered by the committee upon its merits." This language comports with the requirement in section 20 that every measure referred to a committee of reference "shall be considered by the committee upon its merits," as we have interpreted that requirement above. Further, the House Rule was enacted after the GAVEL amendments were adopted and tracks the language of the section 20 amendment.

Thus, we reject defendants' interpretation of the House Rule that would equate a vote on a supermotion with consideration by the committee on the merits of a bill. Defendants' reading of the House Rule is also inconsistent with other House rules that treat "consideration" and a "vote" as different processes. *See* House Rule 25(j)(1)(E) ("Each measure assigned or referred to a committee shall be set for committee consideration at a scheduled meeting, considered by the committee upon its merits, and acted upon by the committee."); House Rule 25(j)(1)(E.3) (limiting "consideration" in the Appropriations Committee of any bill that has already been considered by another committee to the "measure's fiscal impact").

Plaintiff contends that the House Rule is rendered unconstitutional in part by the provision that "If such motion [a supermotion] fails to pass, the failure of such motion to pass shall have the same effect in all respects as the adoption of a motion that consideration of the measure be indefinitely postponed." According to plaintiff, once a supermotion fails to pass, the rule requires the bill to be indefinitely postponed without the measure ever having been considered. We disagree with this interpretation.

Under a proper interpretation of the House Rule, before a vote may occur on a supermotion, a bill must be "considered upon its merits"; in other words, there must be some interactive consideration of the bill by the committee, as required by the GAVEL amendment. Under these circumstances, if a supermotion fails to pass, GAVEL's requirement that the committee consider a bill on its

merits should already have been met. Thus, when "consideration" on the measure is "indefinitely postponed," this simply means that the bill cannot be resurrected and reconsidered. Only through this interpretation does the House Rule avoid contradiction, absurdity, and unconstitutionality. *See Rodriguez v. Schutt,* 914 P.2d 921, 925 (Colo.1996)(we will give effect to the plain meaning of the statute's words and phrases, unless the result is absurd or unconstitutional).

Accordingly, if, upon the making of a supermotion, a measure is first considered by the committee on its merits and then voted upon, there is no constitutional infirmity in the House Rule's further provision that if the motion fails to pass, the measure is then deemed indefinitely postponed.

Finally, we disagree with plaintiff's argument that a vote pursuant to a supermotion is not a vote on the merits, but is only a procedural vote. If a committee first has an opportunity to consider a bill on its merits, any subsequent vote, whether to recommend the bill favorably to the full House, to kill the bill in committee, or to take some other action consistent with the House rules for deciding on a bill, is a vote on the merits.

Accordingly, we conclude that House Rule 25(j)(1)(G), on its face, complies with the GAVEL amendment to section 20.

## C. Constitutionality of Defendants' Actions

■ However, we agree with plaintiff that his complaint adequately alleges a claim for declaratory relief that defendants' alleged actions with respect to HCR 1009 in forcing a vote on the supermotion without prior committee consideration on the merits, as we have interpreted that term, violated section 20.

The complaint alleges that certain defendants forced a vote on a supermotion concerning HCR 1009 without any prior interactive consideration by the committee on the merits of the measure itself. Thus, if we assume the truth of the facts alleged in the complaint, the actions taken here would have violated the GAVEL amendment requirement that the committee of reference consider the measure on its merits. Further, the actions alleged here would have violated the House Rule as well, which also requires consideration on the merits.

Both the GAVEL amendment and the House Rule were intended to allow a legislator who supports a bill to obtain both committee consideration and a vote on the merits of the bill when a majority party committee chair might otherwise kill the bill without a hearing and vote. Here, a legislator who did not support the bill and a majority party committee chair allegedly used the supermotion device to kill plaintiff's bill without prior committee consideration on the merits in a way that effectively turned the GAVEL amendment to section 20 on its head, thus defeating the intention of the electorate in adopting that amendment.

The trial court's judgment granting the motion to dismiss is affirmed insofar as the complaint concerns the two bills not sponsored by plaintiff. In all other respects, the judgment is reversed, and the case is remanded to the trial court for further proceedings in accordance with this opinion.

Judge TAUBMAN and Judge KAPELKE concur.