**Raymond E. THORNE, Plaintiff–Appellant,**

v.

**Donald H. BAUDER, Karen Bauder, and RBM Precision Metal Products, Inc., a Colorado corporation, Defendants–Appellees.**

**No. 97CA0133.**

Colorado Court of Appeals,
Div. II.

Nov. 27, 1998.

Rehearing Denied Dec. 31, 1998.

Certiorari Denied Aug. 2, 1999.*

---

* Justice KOURLIS would grant as to the following issues:

  Whether the court of appeals' decision is in accord with *Van Schaack Holdings Ltd. v. Van Schaack,* 867 P.2d 892 (Colo.1994).

Whether the court of appeals erred in substituting its view of the evidence for that of the jury.

Whether the court of appeals erred in overturning the jury's finding that respondent sustained no damages.

Scott W. Johnson, Robert W. Johnson, Colorado Springs, Colorado, for Plaintiff–Appellant.

Mulliken, Gleason & Weiner, P.C., Edward A. Gleason, Mary M. Kominek, Colorado Springs, Colorado, for Defendants–Appellees.

Opinion by Judge CRISWELL.

Plaintiff, Raymond E. Thorne, appeals from a judgment entered on a jury verdict against him that dismissed his claim for breach of fiduciary duty against defendants, Donald H. Bauder, Karen Bauder, and RBM Precision Metal Products (RBM). We reverse and remand for a new trial on the issue of damages alone.

Substantially all of the relevant facts are undisputed. Those facts reflect the following:

RBM was a closely held corporation, and the individual defendants, who are brother and sister, were its directors and majority shareholders. They had inherited all of its capital stock, except for about 8% thereof, which was owned by plaintiff, one of RBM's employees.

RBM had adopted a November 1 to October 31 fiscal year. In all of the fiscal years prior to that ending on October 31, 1992, the largest profit ever made by RBM in any fiscal year was $275,000, and in some years it had suffered a net loss. In the fiscal year ending on October 31, 1992, however, it had made a profit of about $800,000, and in the 1992–1993 fiscal year, its profits had increased to $1,352,000. The following fiscal year RBM made a profit of $2,880,000.

In April 1993, after learning of the sale of a neighboring steel business and aware of RBM's increasing profitability, defendants consulted with the business broker involved in that sale and obtained from him a written opinion that RBM's business could be sold for $5 million. This opinion was based, in part, upon RBM's profits for the 1991–1992 fiscal year.

Sometime before they received this opinion, defendants had sought to purchase plaintiff's shares in RBM, but he had refused to sell. In response, they had advised him that there was no market for his shares; that they were the only interested buyers; and that the company could become bankrupt at any time. Plaintiff had then asked that he be given an employment contract that would prevent his job termination, except for cause, but defendants refused this request.

After learning of the broker's estimate of RBM's value, defendants again sought to buy plaintiff's shares. At that time, plaintiff asked defendant Donald Bauder to determine his stock's value. Defendants told him that his shares were worth $122,000, and plaintiff testified that he had thought that this figure had been computed by RBM's accountant. At trial, however, defendants were unable to explain how they had arrived at this evaluation. Defendants did not describe to plaintiff how they had arrived at the value stated by them, nor did they disclose the existence or contents of the broker's prior written opinion.

Ultimately, about six months after receiving the broker's opinion, defendants persuaded plaintiff to sell his shares to them for $150,000. This sale occurred on October 15, 1993, about two weeks before the end of RBM's 1992–1993 fiscal year.

In the following spring, defendants listed all of the RBM stock for sale with the business broker whom they had previously contacted, and a contract for the sale of all of RBM's stock was entered into in July 1994, approximately nine months after defendants had acquired plaintiff's stock. From this sale, defendants received net proceeds of approximately $9,500,000. Hence, it could be found that defendants received some $600,-000 more from the sale of the stock that plaintiff had sold to them than they had paid him.

Based on the foregoing events, plaintiff initiated this action, alleging numerous claims against defendants, but ultimately the case was submitted to the jury only on plaintiff's claim for defendants' breach of fiduciary duty, based on defendants' status as directors and majority shareholders of RBM. Before submission of the case to the jury, plaintiff had sought a directed verdict against defendants and, alternatively, had asked the court to instruct the jurors, as a matter of law, that the broker's opinion of the value of RBM was a material fact that defendants had failed to disclose. The court refused both requests, and the jury returned a verdict in favor of defendants.

## I.

Plaintiff contends that the trial court erred by refusing to rule that the undisputed facts demonstrated that defendants had breached a fiduciary duty owed to him by failing to disclose the broker's opinion of the value of RBM, which was, as a matter of law, a material fact. We agree.

■ When the officers or directors of a closely held corporation seek to purchase the shares of a minority shareholder, they owe a fiduciary duty to that minority shareholder to disclose all material facts of which they are aware. For this purpose, a fact is "material" if there is a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of a reasonable shareholder and would have been viewed by a reasonable investor as having significantly altered the total mix of information available.

*Van Schaack Holdings, Ltd. v. Van Schaack*, 867 P.2d 892 (Colo.1994) (adopting the analysis contained in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). *See also Goss v. Clutch Exchange, Inc.*, 701 P.2d 33 (Colo. 1985) (applying same definition of materiality for purposes of actions under the Colorado Securities Act).

■ Generally, the question whether an undisclosed fact is "material" under this formulation is a question for the factfinder. However, if the information is of a nature that reasonable minds could not differ with respect to the issue, the question of materiality becomes one of law to be resolved by the court. *Van Schaack Holdings, Ltd. v. Van Schaack, supra.* *See also Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937) (jury verdict for defense on fraudulent nondisclosure claim overturned because undisclosed information was material as a matter of law); *Garcia v. Cordova*, 930 F.2d 826 (10th Cir.1991)(question whether undisclosed information is material under federal securities law is a mixed question of law and fact).

At least for purposes of the federal securities laws, some courts have distinguished between "hard" information, which normally consists of historical facts that can be objectively verified, and "soft" information, which consists of a subjective analysis, such as a projection, estimate, or opinion. And, an asset appraisal under this analysis has been categorized as soft information. *Garcia v. Cordova, supra.*

■ In determining whether information falling into the latter category is material, the dispositive factors are the nature of the undisclosed information and its importance, reliability, and investor impact. If the appraisal information is not reasonably current, if the appraiser considered only a portion of the assets that made up the value of the stock, or if the appraisal was made for a

purpose other than determining the fair market value of the corporate assets in the case of a sale, it may be considered, as a matter of law, to be unreliable upon the question of the value of the corporate stock. In such a case, its unreliability mandates that it be considered immaterial. *Garcia v. Cordova, supra.*

On the other hand, the mere fact that information is based upon an opinion does not mean that it is not material. The question, in each case, is whether the information, considering the specific factual circumstances involved, would have assumed actual significance in the deliberations of a reasonable shareholder or would have been considered by a reasonable investor as having significantly altered the total mix of the available information. *See Van Schaack Holdings, Ltd. v. Van Schaack, supra.*

■ Here, the opinion was given by a professional, disinterested expert. It was made for the purpose of determining the fair market value of all of the capital stock of RBM, if all of it were sold to a single purchaser. Indeed, defendants requested the opinion, which was made only a few months before they purchased plaintiff's stock, so that they might be informed as to the price that they could expect to receive in case of a sale of all of RBM's stock. In addition, the reliability of this expert's opinion is enhanced both by the fact that broker had recently sold a neighboring business and was, therefore, familiar with the market for local businesses, and by the fact that defendants later used that broker to market RBM. *See Van Schaack Holdings, Ltd. v. Van Schaack, supra* (materiality of information enhanced by fact that purchaser of stock acted upon it).

■ Further, plaintiff made clear that he considered information respecting the fair market value of his shares to be significant to his determination of the price to be placed upon his interest. And, one of the determinative factors of the value of shares in a closely held corporation, for which there is no ready market, is the overall value of the business. Yet, when asked by plaintiff to evaluate the stock owned by him, defendants asserted that plaintiff's eight percent interest was worth only $122,000. No explanation as to the basis for this evaluation was given to

plaintiff, and the opinion of the broker as to the value of the business itself was not disclosed.

Given the circumstances portrayed by this record, therefore, we conclude that the information that defendants admittedly failed to disclose to plaintiff was information that any reasonable stockholder would have considered significant in reaching some decision upon the value of the capital stock held by that stockholder, and it would have been considered by any reasonable investor to alter significantly the mix of the information that was otherwise available. Hence, we conclude, as a matter of law, that the information withheld from plaintiff was material to the decision to be made by him. *See Morrison v. Goodspeed, supra.*

From this conclusion, it necessarily follows that the trial court erred in failing to direct a verdict in his favor.

## II.

Defendants argue, nevertheless, that the judgment of the trial court must be affirmed because, even if their liability might otherwise have been established, plaintiff failed to present sufficient evidence to demonstrate that he had been damaged by defendants' withholding of material information, and the jury decided the factual question of damages against plaintiff. We reject both assertions.

## A.

The trial court instructed the jury that, in ascertaining the damages suffered by plaintiff, if any, consideration should be given to the value of the profit received by defendants, as well as to any loss of profits or income that plaintiff might have been expected to earn had there been no breach of fiduciary duty.

Defendants objected to this instruction and insisted that, rather than the standard set forth in this instruction, the proper measure of damages would be the difference between the value of plaintiff's stock on the date of its sale to defendants (October 15, 1993) and the amount that defendants paid for it ($150,000).

The question of the proper measure of damages in this case has not been presented to or argued before us. Hence, we express no opinion upon that issue. However, we conclude that the evidence presented by plaintiff with respect to the damages he allegedly sustained was legally sufficient to show injury, irrespective of which of the two measures is determined to be proper.

Plaintiff's expert opined that, as of the date of the sale of plaintiff's stock, it had a fair market value between $485,000 and $753,000, based upon RBM's profits for the 1992–1993 fiscal year and the expectations for profit during the next fiscal year. If that testimony were credited, it would mean that defendants purchased the stock for some $335,000 to $603,000 less than its fair market value at the time of the sale. Hence, this testimony would have supported an award of damages either under the instructions given to the jury or under the measure of damages that defendants insisted was proper.

### B.

We also conclude that it is not possible to say that the jury's verdict determined that plaintiff suffered no damage as a result of the transaction in question.

The form upon which the jury returned its verdict contained five special interrogatories. The first four asked whether defendants had failed to disclose material facts, whether the "undisclosed facts" were made known to defendants as a result of their position as directors, whether the "undisclosed facts" were "unknown" to plaintiff, and whether the "undisclosed facts" were material. Each of these interrogatories was answered, "no"— responses that we have concluded were simply not supported by the undisputed facts.

By the fifth interrogatory, then, the jury was asked:

> Did one or both Defendants' failure to disclose, or misrepresentation of material facts cause Plaintiff to suffer damages?

The jurors also gave a negative answer to this last interrogatory. However, we are not persuaded that this response necessarily demonstrates that plaintiff suffered no losses as a result of the sale of his stock to defen-

dants. While this might be one possible interpretation of its meaning, it could just as readily be taken as a determination that a failure to disclose or a misrepresentation was not the *cause* of any loss that plaintiff might have suffered. Indeed, given the wording of this interrogatory and the jurors' previous determination that there had been no failure to disclose nor any misrepresentation, it might well be concluded that the latter interpretation is the proper meaning to be placed upon this response.

In any event, however, we cannot say with any degree of assurance that the jury determined that plaintiff suffered no loss from the transaction in question. Accordingly, we conclude that the jurors' response to this interrogatory does not preclude reconsideration of whether plaintiff did, in fact, suffer any damage as a result of defendants' non-disclosure.

Contrary to plaintiff's argument, however, we do not agree that he is entitled to *some* damages, as a matter of law. The evidence before the trial court contained the testimony from another expert that the price paid to plaintiff was a fair price to be paid a minority stockholder. While, as noted, this record does not support a conclusion that the jury necessarily accepted this testimony and based its verdict upon it, there is no reason to conclude that this evidence would have been insufficient upon which to base such a finding.

### III.

Plaintiff's final assertion is that the trial court erred in allowing defendant's expert to testify to the basis upon which other minority stockholders on previous occasions had sold their stock to defendants. We agree that this evidence, if offered again upon re-trial, should be received only under particular circumstances.

We agree with plaintiff that evidence that he was treated in the same way that other minority shareholders had been treated is irrelevant to the question whether defendants breached their fiduciary responsibilities to him. However, evidence of the sales of stock by other minority shareholders could

be relevant upon the question of damages if the court determines that those previous sales were to knowledgeable buyers under sufficiently similar in circumstances and so reasonably close in time to the sale of plaintiff's stock that they could be considered to be "comparable sales." If the circumstances are not sufficiently similar, testimony with respect to those prior sales should be excluded. *See Department of Highways v. Schulhoff,* 167 Colo. 72, 445 P.2d 402 (1968) (whether sales of other properties are sufficiently similar and not so far removed in time as to make any comparison unjust or impossible is question directed to trial court's sound discretion).

The judgment is reversed, and the cause is remanded to the trial court with directions to enter an order that defendants breached the fiduciary duty owed by them to plaintiff and for a new trial on the question of the damages, if any, suffered by plaintiff as a result of that breach.

Judge CASEBOLT and Judge VOGT concur.