Larry N. WISEHART, Plaintiff–
Appellant,

v.

ZIONS BANCORPORATION and Brent
C. Beichle, Defendants–Appellees.

No. 01CA0671.

Colorado Court of Appeals,
Div. V.

April 25, 2002.

William C. Danks, Denver, Colorado, for Plaintiff–Appellant.

McNamara Law Firm, P.C., John N. McNamara, Jr., Griffith A. Kundahl, Denver, Colorado, for Defendants–Appellees. .

Opinion by Judge DAVIDSON.

In this action for fraudulent nondisclosure in a stock transaction, plaintiff, Larry N. Wisehart, appeals from the judgment of the trial court entered in favor of defendant Zions Bancorporation. He also appeals from the dismissal of his complaint against defendant Brent C. Beichle for failure to state a claim pursuant to C.R.C.P. 12(b)(5). We reverse and remand for further proceedings.

The following facts are undisputed. Plaintiff and Beichle both worked as senior officers at the Independent Bank of Kersey. Both owned shares of Kersey Bancorp (Kersey), the holding company of the Independent Bank of Kersey and other banks.

The board of directors of Kersey decided to issue additional stock in the summer or fall of 1997. Plaintiff was not initially invited to purchase stock, but after Beichle asked him if he was interested in purchasing stock, plaintiff expressed interest and Beichle provided plaintiff with a written offer letter. The offer letter was dated August 15, 1997 and signed by the president of Kersey, Larry Neuschwanger. The letter indicated that shares were being offered at $130 per share and that a response should be given by September 1, 1997. It also stated: "If any shareholder should need additional financial information or other data concerning the Bancorp or Independent Bank, please contact [Neuschwanger]."

Beichle purchased 385 additional shares, which were issued in late September. Stock was issued to certain others beyond the September 1, 1997 deadline, as late as December 2, 1997. Plaintiff did not purchase additional shares.

In February 1998, the board of directors received an offer from Zions Bancorporation to purchase Kersey. In May 1998, a written sale agreement was entered into, which provided for a merger of Kersey into Val Cor Bancorporation, an entity owned by Zions, and valued the Kersey stock at approximately $450 per share. The agreement required the approval of the Kersey shareholders, which they gave on August 25, 1998.

In February 2000, plaintiff brought this tort action for fraudulent nondisclosure, alleging in his complaint that Beichle, as agent for Kersey, "failed to disclose that the price of stock would soon rise greatly in value because unbeknownst to [plaintiff], the persons who controlled Kersey Bancorp had decided to sell the Kersey Bancorp to a larger banking organization." Zions was named as a defendant because it had assumed the liability of Kersey and its officers under the terms of the merger.

On March 14, 2001, the trial court granted Zions' motion for summary judgment and Beichle's motion to dismiss. On March 28, 2001, plaintiff filed a C.R.C.P. 59 motion, alleging that disputed factual issues remained and seeking to amend his complaint. On April 2, 2001, prior to any response by defendants, the trial court denied that motion. Defendants filed a motion for costs and attorney fees, which the court denied except for the cost of depositions.

I.

Plaintiff first contends that the trial court erred in entering summary judgment in favor of Zions on claims based on its liability

for Kersey's alleged nondisclosure. We agree in part.

A motion for summary judgment should be granted only when the moving party has demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* C.R.C.P. 56(c); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988). Review of a grant of summary judgment is de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251 (Colo.1995).

■ The terms fraudulent concealment and fraudulent nondisclosure are sometimes used interchangeably. *See Ackmann v. Merchs. Mortgage & Trust Corp.*, 645 P.2d 7 (Colo.1982). The two torts require essentially the same elements. *See* CJI–Civ. 4th 19:2 (Cum.Supp.2000). While the parties refer to plaintiff's claim here as one for fraudulent concealment, it is more properly characterized as one for fraudulent nondisclosure. *See* CJI–Civ. 4th 19:5, 19:6 (Cum.Supp.2000).

■ To prevail on a claim for fraudulent nondisclosure, a plaintiff must demonstrate, inter alia, that the defendant failed to disclose a past or present fact that he or she had a duty to disclose, with intent to induce the plaintiff to take a course of action he or she would not otherwise have taken, and that plaintiff justifiably relied on the omission. *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105 (Colo.1998); *Ackmann v. Merchs. Mortgage & Trust Corp., supra;* CJI–Civ. 4th 19:2.

In granting Zions' motion, the trial court determined that there was no evidence that the board of directors had decided to sell Kersey before it received the offer in February 1998. Specifically, the court determined that the board was only "looking at the viability of selling," and thus there was no failure to disclose a past or present fact, only speculation about future events. The court also determined that there was no evidence that any information was concealed with the intent to keep plaintiff from purchasing shares.

Plaintiff contends that the trial court's determination that the nondisclosures involved only speculative, future events was erroneous. Moreover, plaintiff contends, disputed issues of material fact remain as to whether the board's meetings with potential buyers were material; whether the board intended by its omissions to induce plaintiff to refrain from purchasing shares; and whether plaintiff justifiably relied on the omissions. We agree that certain of the alleged nondisclosures were actionable, and as to those, entry of summary judgment at this stage of the proceedings was improper.

A.

■ As a threshold matter, we reject defendants' argument that the trial court should not have considered affidavits that were not previously in the record when ruling on the motion to reconsider.

■ This argument was raised for the first time on appeal, and this court will not consider arguments not presented to the trial court. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718 (Colo.1992).

Here, the trial court in fact considered the affidavits, and they are properly before us as a part of the record. *Cf. City of Boulder v. Dinsmore*, 902 P.2d 925 (Colo.App.1995). *See also Bowlen v. FDIC*, 815 P.2d 1013 (Colo.App.1991)(trial court has discretion to consider new theories raised in motion to reconsider grant of summary judgment).

B.

■ Corporate directors and controlling shareholders of a corporation have a fiduciary duty to "act with an extreme measure of candor, unselfishness, and good faith in relation to remaining shareholders"; in the context of close corporations, as here, this duty is enhanced and requires corporate directors to "fully disclose all material facts and circumstances surrounding or affecting a proposed [stock] transaction" with a shareholder. *Van Schaack Holdings, Ltd. v. Van Schaack*, 867 P.2d 892, 897–98 (Colo.1994). Regardless of materiality, however, only nondisclosure of a past or present fact is actionable as a fraudulent nondisclosure. *See Ackmann v. Merchs. Mortgage & Trust Corp., supra.*

■ While plaintiff contends that the board should have disclosed that it had changed its previous plan to sell Kersey in three to five years, we agree with the trial court that the board's intent to sell in three to five years was an estimate and related to the future. Even if the board intended to sell as soon as possible, the eventual sale and its timing were speculative and dependent on future events, and therefore were not past or present facts. *See Denver & S.L.R. Co. v. Moffat Tunnel Improv. Dist.*, 35 F.2d 365 (D.Colo.1929), *modified*, 45 F.2d 715 (10th Cir.1930). *See also Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 921 (Colo.App. 1991)("mere expression of an opinion as to the happening of a future event" is not representation of a past or present fact).

■ However, the trial court determined that the board also had no duty to disclose alleged "discussions [it] had regarding the possible sale of the bank at some future time." It appears that the court was referring to a portion of Neuschwanger's deposition submitted with the motions, which describes a meeting in the fall of 1997 at which the board gave permission to one of its members to inquire whether another bank and its Nebraska-based parent were interested in purchasing Kersey. Neuschwanger's affidavit, signed on March 17, 2001, indicated that this meeting might have occurred as early as June 1997 and that two weeks after the meeting, the board member informed Neuschwanger that the president of the bank had talked with its home office and was not interested in acquiring Kersey. Defendants concede that on November 3, 1997, members of the board asked a colleague to "float" Kersey's name with Zions and to set up a meeting and that the subsequent meeting led to negotiations resulting in the eventual merger.

The trial court was correct to the extent that the conclusions to be drawn from the meetings and discussions were speculative. However, that the meetings and discussions occurred were past or present facts capable of verification. Depending on their timing, they may also have been "concrete, tangible actions" taken in response to the speculation that a sale was planned. *See Van Schaack*

*Holdings, Ltd. v. Van Schaack, supra*, 867 P.2d at 900.

Zions argues, nevertheless, that even if properly characterized as past or present facts, the discussions did not trigger a duty to disclose because they were immaterial as a matter of law. We do not agree.

■ Information is material if "considering the specific factual circumstances involved, [it] would have assumed actual significance in the deliberations of a reasonable shareholder or would have been considered by a reasonable investor as having significantly altered the total mix of the available information." *Thorne v. Bauder*, 981 P.2d 662, 665 (Colo.App.1998).

■■ Whether preliminary merger discussions are material "will depend at any given time upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity." *Basic, Inc. v. Levinson*, 485 U.S. 224, 238, 108 S.Ct. 978, 987, 99 L.Ed.2d 194, 212 (1988). The probability that a merger will occur is assessed by examining the interest in the transaction at the highest corporate levels, including indicia such as board resolutions, communications with investment bankers, and actual negotiations between principals or intermediaries. *Basic, Inc. v. Levinson, supra; see also SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833 (2d Cir.1968).

■ Extensive negotiations, even if unsuccessful, may be material if they demonstrate "that a company's intention to merge or undertake other restructuring has moved beyond its incipient stages and ripened into purposeful action, and that the company has been a plausible merger candidate in the judgment of at least one potential partner." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 182 (2d Cir.2001). *See also SEC v. Gaspar*, [1984–1985 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 92,004, 1985 WL 521 (S.D.N.Y.1985)(where negotiations had progressed beyond the exploratory stage and the founder and majority stockholder of the company was "for the first time seriously responding to and negotiating with a potential purchaser ... the mere fact that the

meetings were taking place was alone material information").

■ Here, the record indicates that the reason for the Nebraska bank's lack of interest in purchasing Kersey was internal and did not concern any attribute of Kersey. While the record indicates that the Nebraska bank contacted its headquarters, it does not describe the extent of the discussions. At this point, then, a question of fact remains as to the materiality of the discussions with the Nebraska bank and, thus, Kersey's duty to disclose those discussions. *See Castellano v. Young & Rubicam, Inc., supra.*

■ Plaintiff also contends that defendants should have disclosed the November 3, 1997 meeting at which board members asked a colleague to "float" Kersey's name with Zions and that the duty to disclose this information continued until December 2, 1997, the date the last stock certificates were issued. However, a director's duty to disclose material information exists only during a stock transaction with the stockholder. *See Van Schaack Holdings, Ltd. v. Van Schaack, supra.* Absent fraud, after a transaction is completed, a director has no continuing duty to inform the shareholder of changed circumstances relating to the transaction. *See Jackson v. Maguire,* 269 Cal. App.2d 120, 75 Cal.Rptr. 16 (1969).

Here, the offer contained in the August 15, 1997 letter required plaintiff to accept by September 1, 1997. By failing to accept the offer by that date, plaintiff rejected it, and the transaction as to him was completed. Thus, whether Kersey had a duty to disclose the November 3, 1997 request to "float" Kersey's name with Zions depends not only on whether the discussions were material, but also on whether the board's failure to disclose the prior discussions with the Nebraska bank when it offered the stock to plaintiff was a fraudulent nondisclosure. If the board's failure to disclose the Nebraska bank discussions was not fraudulent, it would have no responsibility to inform plaintiff of discussions with Zions that occurred after September 1, 1997.

### C.

■ Alternatively, Zions argues that, even if the board had a duty to disclose the meetings involving the possible sale of Kersey, nevertheless, the court correctly determined that it is entitled to judgment because plaintiff provided no evidence that the board intended that plaintiff rely on the omissions or that he take a course of action he otherwise would not have taken. We disagree.

■ Direct evidence of each element of a fraudulent nondisclosure claim is not always required because fraud may be inferred from circumstantial evidence. *See Kopeikin v. Merchs. Mortgage & Trust Corp.,* 679 P.2d 599 (Colo.1984).

Here, the record indicates that the board had authorized a limited amount of stock and that the four members of the board, their families, and related entities purchased nearly seventy percent of the offered stock, many by borrowing heavily. Although Neuschwanger did not have the resources to purchase additional shares, he entered into a twenty-year option agreement with another board member for 769 shares and attempted to keep the option agreement a secret. While defendants claim that stock was offered to all shareholders, plaintiff presented affidavits from some shareholders stating that they were not invited to purchase shares. Affidavits also indicate that certain shareholders were allowed to purchase only a limited number of shares and that relatives of board members who had not previously owned stock purchased some shares.

From these facts, a jury could infer that the board intended that insiders be allowed to purchase the majority of shares issued and that, to facilitate that goal, they did not disclose all material information to plaintiff and other shareholders so as to avoid purchases by minority shareholders.

### D.

■ Similarly, we disagree with Zions that it is entitled to judgment because plaintiff's failure to request additional financial information, as he was invited to do by the August 15, 1997 letter, rendered any reliance on omitted information unjustified.

■ While Zions raised this argument in its motion, it was not the basis of the trial court's decision. We note, however, that a shareholder is not required to ask the right questions to trigger the duty to disclose and "[r]eadiness and willingness to disclose are not equivalent to disclosure." *Van Schaack Holdings, Ltd. v. Van Schaack, supra,* 867 P.2d at 899. *See also Stier v. Smith,* 473 F.2d 1205 (5th Cir.1973).

We need not decide whether a shareholder must make some initial inquiry because, notably, when plaintiff learned that the board was issuing new stock, he affirmatively expressed interest in making a purchase by asking for the written offer. Moreover, Beichle admits that he discussed with plaintiff whether plaintiff intended to purchase additional shares, and plaintiff stated in his August 14, 2000 deposition that he spoke with Neuschwanger about the stock offering and that the "gist" of the discussion was that the stock was being offered to raise capital. Thus, there is also a factual dispute as to whether plaintiff availed himself of the invitation to seek additional information.

## II.

■ Plaintiff also contends that the trial court erred in entering summary judgment in favor of Zions on claims based on its respondeat superior liability for Beichle's alleged nondisclosure of his purchase of additional shares of Kersey stock. In affidavits included in his response to Zions' motion for summary judgment, plaintiff alleged that he and Beichle agreed that neither could afford to borrow funds to purchase more stock unless the bank was going to be sold in the near future and, therefore, they entered into an oral agreement that each would inform the other if he purchased more stock. Plaintiff stated in his affidavit: "I would have understood that he may have been bound to secrecy and could not tell me what he knew. By telling me that he was buying stock, I would have known that he knew that the bank was for sale." Plaintiff argues that summary judgment was improper because this agreement created a duty to disclose Beichle's purchase of shares, the breach of

which was imputable to Zions in this action. We disagree.

In granting Zions' motion for summary judgment, the trial court stated that such an agreement, even if it existed and created a duty to disclose, would not have created a duty that arose because of Beichle's status as agent, so any failure to disclose could not be imputed to the bank. The court also determined that there was no evidence that such an agreement existed.

Plaintiff contends that his affidavit that an agreement with Beichle existed and Zions' stipulation that Beichle was acting within the scope of employment at all times were sufficient to raise a question of material fact regarding a duty to disclose that could be imputed to Zions. We agree that the issue of the existence of an agreement was unresolved. However, we conclude that Beichle had no duty independent of the purported contract to disclose his purchase of shares and, thus, any breach was not tortious.

Plaintiff's only asserted basis for Beichle's duty to disclose his purchase of shares was the agreement between the two of them. Thus, while the breach of such agreement might provide plaintiff with a contract action, it is not sufficient to support a tort claim. *See H & H Distribs., Inc. v. BBC Int'l, Inc.,* 812 P.2d 659, 662 (Colo.App.1990)(a claim predicated on "the mere nonperformance of a promise or contractual obligation or ... the failure to fulfill an agreement to do something at a future time" sounds in contract, not in tort). *See also Town of Alma v. Azco Constr., Inc.,* 10 P.3d 1256 (Colo.2000)(independent duty rule maintains the boundary between contract law and tort law).

Here, plaintiff's complaint did not assert claims for breach of contract, nor did plaintiff seek to amend his complaint to add claims other than fraudulent nondisclosure. Thus, on different grounds, we conclude that the trial court properly granted summary judgment to Zions on plaintiff's claim based on respondeat superior liability for Beichle's alleged failure to disclose his purchase of shares.

## III.

The trial court dismissed plaintiff's claim against Beichle individually for failure to state a claim under C.R.C.P. 12(b)(5) because plaintiff's complaint did not contain sufficient factual allegations to support all the elements of a fraudulent nondisclosure claim. In his C.R.C.P. 59 motion, plaintiff requested "leave to amend the complaint to set forth each of the elements," which the trial court denied as prejudicial to defendants. Plaintiff contends that the denial was an abuse of discretion. We agree.

▆▆▆ The chief function of a complaint is to give notice to the defendant of the transaction or occurrence that is the subject of the plaintiff's claims. *Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095 (Colo. 1995). The complaint need not contain a complete recitation of all the facts supporting the claim for relief. *Eliminator, Inc. v. 4700 Holly Corp.*, 681 P.2d 536 (Colo.App.1984). It need only contain a short and plain statement of the claim, the purpose of which is to provide notice to the defendant of the nature of the claim. *Smith v. Mills*, 123 Colo. 11, 225 P.2d 483 (1950).

▆▆▆ Whether to allow an amendment to a pleading is within the discretion of the trial court. *See Sandoval v. Archdiocese of Denver*, 8 P.3d 598 (Colo.App.2000). However, permission to amend a complaint should be freely given where there is a possibility that the complaint could be amended to set forth a claim for which relief could be granted. *Smith v. Mills, supra.* While undue prejudice to the opposing party may justify denying a request to amend a complaint, delay in seeking an amendment is not a sufficient basis if the other party is not prejudiced. *See Eagle River Mobile Home Park, Ltd. v. Dist. Court*, 647 P.2d 660 (Colo.1982).

Defendants did not argue in the trial court or here that they would be prejudiced by an amendment, and they clearly understood that plaintiff was asserting a claim for fraudulent concealment or nondisclosure. Although they argued that it would be ineffectual, defendants acknowledged, from the time of their first filing in the case, the possibility of an amendment to include allegations on each element. While plaintiff's request to amend the complaint came after the motion to dismiss and grant of summary judgment, it was included within a timely motion for reconsideration under C.R.C.P. 59. *Cf. Wilcox v. Reconditioned Office Sys. of Colo., Inc.*, 881 P.2d 398 (Colo.App.1994)(motion to amend may not be granted after entry of judgment unless judgment is first set aside under C.R.C.P. 59 or 60).

▆▆▆ The trial court dismissed plaintiff's claim against Beichle on the grounds that plaintiff failed to allege facts indicating that Beichle knew of Kersey's discussions with other banks, that Beichle had a duty to disclose such information, or that information was concealed with the intent of dissuading plaintiff from purchasing additional shares. Defendants argue that, nevertheless, amendment would have been futile because, even with amendment, plaintiff could not state a claim for fraudulent nondisclosure. We disagree.

Plaintiff's complaint alleges, "Beichle doubled the amount of stock which he owned in the Kersey Bancorp in August September, 1997 based upon insider knowledge of the planned sale of the bank." Although defendants dispute whether Beichle had knowledge of the discussions with potential purchasers, the allegations contained in the complaint must be taken as true.

Furthermore, while Beichle would have had no duty to disclose material information if he were not acting as a representative for the board in the stock transaction, plaintiff's complaint also alleges that Beichle was acting as agent for Kersey when he failed to disclose that the board had decided to sell. Defendants also dispute this allegation, but, taken as true, the alleged agency relationship would result in a duty to disclose material information to plaintiff.

And, although the complaint does not contain an allegation regarding Beichle's intent or awareness of the board's alleged intent, plaintiff submitted evidence from which a jury could infer that Beichle himself intended to dissuade plaintiff from purchasing shares. The record contains affidavits indicating that Beichle knew from discussion with plaintiff

that plaintiff would not purchase shares unless plaintiff had indications that Kersey would be sold in the near future. In conjunction with Beichle's alleged insider knowledge and status as agent, his failure to inform plaintiff of that knowledge leads to an inference that he intended that plaintiff not purchase shares. *See Carroll v. CUNA Mut. Ins. Soc'y*, 894 P.2d 746, 752 (Colo.1995)("An effect which is the natural and probable consequence of an act or course of action is not an accident. . . .").

Thus, if an amendment had been permitted, plaintiff would have been able to allege facts sufficient to state a claim for fraudulent nondisclosure against Beichle. Therefore, we conclude that the trial court abused its discretion in denying plaintiff's motion to amend his complaint to include allegations that Beichle failed to disclose information about the meetings with potential buyers with the intent that plaintiff refrain from purchasing shares.

### IV.

Plaintiff also contends that the court erroneously granted judgment to defendants for the cost of depositions. Given our determination that the underlying judgment must be reversed, the award of costs is vacated. *See Rossman v. Seasons at Tiara Rado Assocs.*, 943 P.2d 34 (Colo.App.1996).

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge NIETO concur.