COLORADO COURT OF APPEALS
 2016 COA A3

 
 

 Court of Appeals No. 14CA1816
City and County of Denver District Court No. 13CV34544
Honorable Andrew P. McCallin, Judge

 Jane E. Norton,
 Plaintiff-Appellant,
 v.
 Rocky Mountain Planned Parenthood, Inc., a/k/a Planned Parenthood of the Rocky Mountains, Inc., a Colorado nonprofit corporation; John W. Hickenlooper, in his official capacity as Governor of the State of Colorado; Susan E. Birch, in her official capacity as Executive Director of the Colorado Department of Health Care Policy and Financing; and Larry Wolk, in his official capacity as Executive Director of the Colorado Department of Public Health & Environment,
 Defendants-Appellees.

 JUDGMENT AFFIRMED
 Division VI
Opinion by JUDGE TERRY
Bernard and Rothenberg*, JJ., concur
 Announced January 14, 2016

 Arrington Law Firm, Barry Arrington, Denver, Colorado; Alliance Defending Freedom, Natalie Decker, Michael Norton, Greenwood Village, Colorado, for Plaintiff-Appellant
 Tierney Paul Lawrence LLP, Kevin C. Paul, Denver, Colorado, for Defendant-Appellee Rocky Mountain Planned Parenthood, Inc.
 Cynthia H. Coffman, Attorney General, W. Eric Kuhn, Assistant Attorney General, Denver, Colorado, for Defendants-Appellees John W. Hickenlooper, Susan E. Birch, and Larry Wolk
 *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2015.
 
¶1         Plaintiff, Jane E. Norton, sued defendants, Rocky Mountain Planned Parenthood, Inc. (PP), Governor John W. Hickenlooper, Susan E. Birch in her capacity as Executive Director of the Colorado Department of Health Care Policy and Financing, and Larry Wolk in his capacity as Executive Director of the Colorado Department of Public Health and Environment (CDPHE). She has asserted claims for declaratory and injunctive relief against the government defendants, unjust enrichment against PP for allegedly unlawfully receiving payments of public funds, and the imposition of a constructive trust against PP.
 ¶2         Norton’s suit is grounded on article V, section 50 of the Colorado Constitution, which provides that “[n]o public funds shall be used by the State of Colorado, its agencies or political subdivisions to pay or otherwise reimburse, either directly or indirectly, any person, agency or facility for the performance of any induced abortion . . . .” This language places the focus on the purpose for which payments were made. Thus, section 50 prohibits the State from making payments that are made for the purpose of compensating someone for performing an induced abortion.
 ¶3         Even when read broadly, the complaint does not allege that Hickenlooper, Birch, or Wolk (collectively, the State) made the payments for the purpose of paying for any induced abortion. Therefore, Norton did not state a viable claim for violation of section 50.
  
 ¶4         Accordingly, we affirm the district court’s order dismissing Norton’s complaint.
 I. Background
 ¶5         For purposes of this appeal, the following facts are undisputed.
 ¶6         Norton is a private citizen, suing on her own behalf as a Colorado resident and taxpayer. In 2001, when she was Executive Director of CDPHE, she ordered an audit to be done to determine whether PP was separately incorporated, maintained separate facilities, and maintained financial records which demonstrated its financial independence from Planned Parenthood of the Rocky Mountains Services Corporation (Services). The complaint alleges that Services is an affiliate of PP, and that Services “did then and still does perform abortions.”
  
 ¶7         Because the audit showed that PP was charging below-market rent to Services, Norton concluded that PP was subsidizing Services. Norton believed that, under section 50, the State was precluded from paying taxpayer dollars or awarding contracts to PP. She reasoned that, because PP was subsidizing Services, the net result was that the State had been indirectly paying for abortions, in violation of section 50. After Norton’s audit, and at her instigation, the State terminated its contractual relationship with PP and ceased all taxpayer funding of that organization.
 ¶8         According to the complaint, since about 2009, the State has resumed making payments to PP. Norton alleges that the payments amount to direct or indirect subsidization of Services’ abortion operations, in violation of section 50, and her suit seeks a declaratory judgment and injunctive relief voiding any contracts entered into by the State and PP and prohibiting payment of public funds to PP. She also seeks imposition of a constructive trust against PP for return of taxpayer funds paid to it.
 ¶9         The State challenged Norton’s standing to sue in a motion to dismiss under C.R.C.P. 12(b)(1). The district court found that Norton had standing, and that ruling is not challenged on appeal. We proceed to review the district court’s dismissal of the action under C.R.C.P. 12(b)(5).
  
 II. Standards of Review
 ¶10         We review de novo a district court’s dismissal of an action under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted. Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088 (Colo. 2011). We must accept as true all of the complaint’s factual allegations, and we must view them in the light that most favors the plaintiff. Id.
 ¶11         We may affirm a district court’s decision to grant a defendant’s motion to dismiss only if the factual allegations do not, as a matter of law, support the plaintiff’s claim for relief. Id.
 ¶12         A C.R.C.P. 12(b)(5) motion to dismiss serves as a test of the formal sufficiency of a plaintiff’s complaint. Dorman v. Petrol Aspen, Inc., 914 P.2d 909, 911 (Colo. 1996). The chief function of a complaint is to give a defendant notice of the transaction or occurrence that is the subject of a plaintiff’s lawsuit. Rosenthal v. Dean Witter Reynolds, Inc., 908 P.2d 1095, 1099-1100 (Colo. 1995). A complaint should not be dismissed for failure to state a claim so long as the allegations of the complaint, taken as true, demonstrate that the plaintiff may be entitled to legal relief. Id.; Dunlap v. Colo. Springs Cablevision, Inc., 829 P.2d 1286, 1290 (Colo. 1992).
  
 ¶13         We review the interpretation of constitutional amendments de novo. People v. Clendenin, 232 P.3d 210, 212 (Colo. App. 2009). Our task is to “determine what the voters believed the language of the amendment meant when they approved it, by giving the language the natural and popular meaning usually understood by the voters.” Grossman v. Dean, 80 P.3d 952, 962 (Colo. App. 2003). We consider the language of an amendment as a whole. Patterson Recall Comm., Inc. v. Patterson, 209 P.3d 1210, 1214 (Colo. App. 2009). We read the amendment’s words and phrases in context, and we give them their plain and ordinary meanings. Harwood v. Senate Majority Fund, LLC, 141 P.3d 962, 964 (Colo. App. 2006). We also employ the rules of grammar and common usage. § 2-4-101, C.R.S. 2015.
 ¶14         We must render every word operative instead of meaningless. Patterson, 209 P.3d at 1215. We avoid unreasonable interpretations and those that lead to absurd results. Id. We do not add words that the amendment does not contain. Beinor v. Indus. Claim Appeals Office, 262 P.3d 970, 975 (Colo. App. 2011). 
  
 ¶15         If the language of the provision is clear and unambiguous, we will enforce it as written. Dwyer v. State, 2015 CO 58, ¶19. We will resort to other rules of interpretation only if we conclude that the language is ambiguous, meaning that it is susceptible of two or more reasonable interpretations. Id.
 III. Pertinent Allegations of the Complaint
 ¶16         Although Norton’s complaint did not allege that PP itself performed abortions, it alleged that Services performed them and that the two entities
 have been conjoined, interrelated, and integrated affiliates or entities of each other and occupy the same office space, utilize the same medical professional and lay staff, utilize the same medical supplies and services, utilize the same office supplies and services, [and] utilize the same utilities . . . .
 According to the complaint, the State made payments to PP that “directly or indirectly subsidized” abortions performed by Services because PP charged Services less than market rent.
 IV. Section 50 Focuses on the Purpose for Which Payment Was Made
 ¶17         Section 50 is explicit that State funds may not be used to pay or reimburse anyone “for the performance of any induced abortion.” This language requires that the purpose for which the State makes the payment be analyzed.
  
 ¶18         Norton does not allege that the State made payments to PP or Services for the purpose of reimbursing them for performing abortion services. And the State submitted proof to show that it made payments to PP only for nonabortion services, such as cancer screenings, office visits, copies of medical records, birth control, and testing for infections.
 ¶19         Norton’s complaint is focused on the possibility that state funds ended up being used by PP to subsidize the rent for Services. The complaint alleges that PP was “subsidizing the rent for [Services], an affiliate that performs abortions,” and that PP “refused to comply with . . . instructions . . . to charge fair market rent to [Services] and otherwise separate the activities and operations of [PP] from the activities and operations of [Services].” It asserts that PP “has intentionally not taken any action to demonstrate its independence from [Services] and thus compliance with the Colorado Constitution or to otherwise become independent from” Services and thus, under section 50, PP is ineligible to receive Colorado public funds.
 ¶20         As the district court concluded, the sole basis for Norton’s claim is her theory that PP’s subsidization of Services is in violation of section 50.
 ¶21         We need not decide whether subsidization equals “payment” because even if it does, Norton’s theory still cannot prevail.
 ¶22         Section 50 does not address what the funds ultimately may be used for by the payee after the State pays the funds, and therefore her subsidization theory cannot support a claim under that section.
 ¶23         Norton points us to the words “directly or indirectly” in section 50. Those words, however, modify the words “pay or . . . reimburse . . . for,” Colo. Const. art. V, § 50 (emphasis added), and thus are focused on the actions of the payor, and not on what is done with the funds after they have been received by the payee. Those words do not divert the focus of the analysis away from the purpose for which the State made the payment.
 ¶24         If we were to adopt Norton’s interpretation of “directly or indirectly” to refer to how the funds ultimately are used by the payee, it would lead to an absurd result. For example, the State pays salaries to its employees. If one of those employees were to make a donation to Services, under Norton’s theory, the payment of salary to the employee would be an indirect payment for an induced abortion and would violate section 50. This result cannot have been intended by section 50, even if the State happened to know that the employee planned to use the funds for that purpose, because the connection to an induced abortion is too attenuated from the reason for the initial payment of salary to the employee. The “bottom line” is that in this example, the State paid the employee — or, as alleged here, PP — for services other than performing induced abortions, and therefore section 50 was not violated.
  
 ¶25         We reject Norton’s interpretation because it goes beyond the Colorado Constitution’s plain language, which is limited to analyzing the purpose for which the payment is made. Section 50 cannot rationally be read to prohibit the State from paying “money that merely ends up in the hands of someone who performs induced abortions.”
 V. The Complaint Fails to State a Claim
 ¶26         The procedural posture of this case is unusual, but the analysis is simple: Because Norton’s complaint did not state a viable claim, the district court correctly dismissed the complaint.
  
 ¶27         The analysis takes an odd, but brief, detour through summary judgment law under C.R.C.P. 56, but it ultimately reverts to a C.R.C.P. 12(b)(5) analysis.
 ¶28         The issue came before the district court as a motion to dismiss under C.R.C.P. 12(b)(5). Because the parties filed affidavits and exhibits in connection with the motion, C.R.C.P. 12(b) and supreme court case law required the district court — at least temporarily — to treat the motion as one for summary judgment under C.R.C.P. 56. See C.R.C.P. 12(b) (Where, in connection with a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted, “matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in C.R.C.P. 56.”) (emphasis added); Bristol Bay Prods., LLC v. Lampack, 2013 CO 60, ¶46.
 ¶29         However, the analysis of the case ultimately turned on whether the complaint set forth allegations on which relief could be granted. Even at the summary judgment stage, “the facts pleaded must, on their face, be sufficient to sustain a cause of action.” Field v. Sisters of Mercy of Colo., 126 Colo. 1, 6, 245 P.2d 1167, 1169 (1952), overruled on other grounds by Mile High Fence Co. v. Radovich, 175 Colo. 537, 543-44, 548, 489 P.2d 308, 312, 314-15 (1971), superseded by statute, Premises Liability Act, Ch. 109, sec. 1, § 13-21-115, 1986 Colo. Sess. Laws 683. Accordingly, a judgment of dismissal for failure to state a claim may be entered upon a motion for summary judgment. Sisters of Mercy, 126 Colo. at 5-6, 245 P.2d at 1169; Smith v. Mills, 123 Colo. 11, 14, 225 P.2d 483, 485 (1950).
  
 ¶30         As we have already determined, Norton’s allegations are insufficient to set forth a viable claim. Under these circumstances, the district court correctly focused on the adequacy of the allegations of the complaint. Because, as the case was pleaded by Norton, there was no basis on which she could be entitled to relief, the district court correctly dismissed the complaint. Sisters of Mercy, 126 Colo. at 5-6, 245 P.2d at 1169; Smith, 123 Colo. at 14, 225 P.2d at 485.
 ¶31         And, because the ample evidence submitted to the district court in response to the motion to dismiss failed to establish that a colorable claim for relief could be pleaded, we see no possibility that the complaint could be amended to state a claim that could survive under C.R.C.P. 12(b)(5) — i.e., a claim that the State paid for the performance of an induced abortion. Therefore, the district court did not err in dismissing the action without granting leave to amend the complaint. See W.O. Brisben Cos. v. Krystkowiak, 66 P.3d 133, 138 (Colo. App. 2002) (“While ‘permission to amend a complaint should be freely given where there is a possibility that the complaint could be amended to set forth a claim for which relief could be granted,’ in view of the evidence submitted to the trial court in response to plaintiff’s motion to dismiss, we see no such possibility here.” (citation omitted) (quoting Wisehart v. Zions Bancorporation, 49 P.3d 1200, 1208 (Colo. App. 2002))), aff’d, 90 P.3d 859 (Colo. 2004).
  
 VI. Additional Discovery Was Not Warranted
 ¶32         Norton argues that judgment should not have been entered against her without giving her the opportunity to conduct additional discovery to establish her claims. We disagree. Because the complaint did not state a viable claim, there was no basis on which the court could permit Norton to take additional discovery. See Am. Family Mut. Ins. Co. v. Am. Nat’l Prop. & Cas. Co., 2015 COA 135, ¶¶46-47.
 VII. Conclusion
  
 ¶33         We affirm the district court’s order dismissing Norton’s complaint under C.R.C.P. 12(b)(5).
 JUDGE BERNARD and JUDGE ROTHENBERG concur.
 
These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here.