QUESTION PRESENTED AND CONCLUSION Question: Whether the statutory definition of "Full-Time Equivalent Student Enrollment" in House Bill 09-1272, which limits Adams State College's Full-Time Equivalent Student Enrollment for purposes of the community college funding program created by Amendment 50 "to enrollment in the associate's degree programs that existed as of November 4, 2008,"[1] is consistent with the provisions of Amendment 50.
Answer: No. Amendment 50 by its terms mandates that all of Adams State College's community college students and programs receive additional funding under the measure in proportion to the College's respective student enrollment in the previous fiscal year.
 BACKGROUND
Adams State College is a general baccalaureate institution which includes a community college as part of its statutory mandate:
 There is hereby established a college at Alamosa, to be known as Adams state college, which shall be a general baccalaureate institution with moderately selective admission standards. *Page 2 
Adams state college shall offer undergraduate liberal arts and sciences, teacher preparation, and business degree programs, a limited number of master's level programs, and two-year transfer programs with a community college role and mission. Adams state college shall not offer career and technical education programs. Adams state college shall receive resident credit for two-year course offerings in its commission-approved service area.[2]
Thus, although Adams State College is generally a four-year baccalaureate institution, it does have a statutory role and mission as a community college. This community college role and mission is currently reflected in Adams State College's Associate of Art/Science Program offerings.[3]
These are two-year transfer degrees that meet the state's guaranteed transfer requirements. These degrees are general purpose degrees intended for transfer to four-year degree programs exactly like those degrees at regular community colleges. They do not have majors or specializations, and each student is free to design his or her own degree program within the broader requirements. Adams State College currently has approximately 120 students enrolled in AA and AS programs.
Adams State College's community college programs are included in the Colorado Commission on Higher Education's geographic and programmatic service areas for Colorado community college programs.[4] The Colorado Commission on Higher Education's Service Areas of Colorado Institutionsof Higher Education, October, 1995, Part N, defines the geographic service areas for all Colorado Community Colleges and area vocational schools. This regulation recognizes the dual role of Adams State College, providing that "[t]wo four-year institutions, Adams State College and Mesa State College, have two-year roles and may conduct appropriate two-year programs in their defined service areas." The regulation goes on to define the Adams State College community college service area as follows:
 Adams State College shall provide Resident Instruction two-year academic programs in Saguache, Mineral, Rio Grande, Alamosa, Conejos, and Costilla counties. It shall cooperate with Mesa State College in providing any needed two-year academic programs, coordinated by the central office of The State Colleges in Colorado, in Gunnison and Hinsdale counties.[5]
State-supported institutions of higher education are prohibited from offering off-campus instruction or programs outside of their Commission-approved service areas unless approved by the Commission or otherwise provided by law.[6] Thus, Adams State College is *Page 3 
the sole provider of community college resident two-year academic programs for its Commission-designated service area.
 DISCUSSION
Amendment 50 allows residents of Central City, Black Hawk, and Cripple Creek to vote to extend casino hours, approve additional games, and increase the maximum single bet limit for legalized gaming. The residents of all three municipalities have now done so. The new gaming tax revenues that will result from these expanded gaming limits are to be used, in part, to fund Colorado community colleges. Specifically, the text of Amendment 50 provides that the new tax revenues will be distributed to community colleges as follows:
 (A) Seventy-eight percent to the state's public community colleges, junior colleges, and local district colleges to supplement existing state funding for student financial aid programs and classroom instruction programs; provided that such revenue shall be distributed to institutions that were operating on and after January 1, 2008, in proportion to their respective full-time equivalent student enrollments in the previous fiscal year.[7]
House Bill 09-1272, which implements Amendment 50, limits Adams State College's Full-Time Equivalent Student Enrollment for purposes of participation in the revenues created by Amendment 50 "to enrollment in the associate's degree programs that existed as of November 4, 2008,"[8]. Thus, the legality of House Bill 09-1272's limitation on Adams State College's Full-Time Equivalent Student Enrollment under Amendment 50 turns first upon whether Adams State College's programs meet the definition of the "state's public community colleges, junior colleges, and local district colleges" as those terms are used in Amendment 50. The question then becomes whether the legislature can limit the number of students that can be counted towards Adam's State College's eligible enrollment.
I conclude that Adams State College's community college programs do meet these definitions and are thus eligible for Amendment 50 funding. Furthermore, I conclude that nothing in Amendment 50's language or history allows the General Assembly to limit Adams State College's eligible student enrollment, but rather specifies that Adams State College receive revenue in proportion to its full-time equivalent student enrollment for the previous fiscal year.
I. Adams State College's community college programs are included inAmendment 50.
In interpreting an initiative, we must "determine and give effect to the will of the people in adopting the measure." Bolt v. Arapahoe CountySch. Dist. No. Six, 898 P.2d 525, *Page 4 
532 (Colo. 1995). Amendment 50 expressly declares that its purpose is to provide additional gaming tax revenue to "the state's public community colleges, junior colleges, and local district colleges" that were operating on and after January 1, 2008, "in proportion to their respective full-time equivalent student enrollments in the previous fiscal year."[9] Thus, the intent of the initiative is clearly to benefit community colleges and their students in proportion to their respective, annual student enrollment.
The deliberate use of the terminology "the state's public community colleges, junior colleges, and local district colleges" indicates an intent that the benefit extend beyond those public community colleges under the authority of the State Board for Community Colleges and Occupational Education, and be inclusive of all public colleges authorized to engage in a community college role and mission.[10] If Adams State College were excluded from eligibility for revenue under this Initiative, then those students receiving community college services either now or in the future in Adams State College's Commission-designated service area would be excluded from the benefits of Amendment 50. Excluding Adams State College would be a clear violation of the text of Amendment 50, which states that its benefits are to go to, among others, all community college programs.[11]
Such an interpretation also would be contrary to the clear intent of the voters who adopted Amendment 50. In determining intent, we look to the Blue Book issued by the Colorado Legislative Council as an aid in interpreting initiated constitutional amendments. See Grossman v. Dean,80 P.3d 952, 962 (Colo.App. 2003). In this case, the 2008 Blue Book Colorado Ballot Analysis for Amendment 50 notes that "[i]ncreasing financial aid will help more Coloradoans benefit from the economic opportunities that community colleges can provide. The additional revenue also goes to recruiting and retaining qualified faculty so that Colorado can offer quality education throughout the state." Thus, an interpretation of the scope of Amendment 50 that would, in effect, exclude resident students within Adams State College's exclusive geographic and programmatic service area would appear contrary to the intent of the Initiative to expand community college opportunities and access to qualified faculty for all of Colorado's citizens.
II. House Bill 09-1272's effort to limit the number of students thatcount toward a community college's enrollment conflicts with Amendment50.
Amendment 50 states that "such revenue shall be distributed to institutions that were operating on and after January 1, 2008, in proportion to their respective full-time equivalent student enrollments in the previous fiscal year."[12] Thus, the language of Amendment 50 is directive regarding distribution of revenues — such a distribution shall be proportional among the eligible institutions, and is to be made on the basis of each of the eligible institutions' respective full-time equivalent student enrollment for community college programs for the previous fiscal year. *Page 5 
Under House Bill 09-1272, limited gaming funds raised by Amendment 50 shall be distributed to colleges that were operating on and after January 1, 2008, "in proportion to their respective full-time equivalent student enrollments in the previous fiscal year."[13] "Colleges that were operating on and after January 1, 2008," is defined by House Bill 09-1272 to include the two-year academic role and mission of Adams State College.[14] "Full-Time Equivalent Student Enrollment," in turn, is defined as the number of in-state, full-time equivalent students enrolled at a college, as determined by state law.[15] These provisions properly implement the unambiguous text of Amendment 50, and, if these were the only provisions at issue, there would not be a problem.
House Bill 09-1272, however, goes on to include a provision that specifically excludes Adams State College from this enrollment definition. What is now subsection 701.5(4)(c)(II) limits only Adams State College to "enrollment in the associate's degree programs that existed as of November 4, 2008."[16] This limitation is contrary to Amendment 50 and therefore unconstitutional.
The language of Amendment 50 is clear that once an institution is eligible for the funding, the limited gaming funds are distributed to eligible institutions "in proportion to their respective full-time equivalent student enrollments in the previous fiscal year." As set forth above, Adams State College is clearly eligible for Amendment 50 funding. It is therefore entitled under the plain language of the Constitution to funds "in proportion to [its] full-time equivalent student enrollments in the previous fiscal year."
Under the statutory scheme in House Bill 09-1272, monies would not be distributed to Adams State College in proportion to its respective student enrollment as of the previous fiscal year, but rather by its enrollment as of November 4, 2008. To the extent subsection 701.5(4)(c)(II) would count fewer than the full number of students enrolled in Adams State College's associate's degree programs, therefore, it is directly contrary to the terms of Amendment 50.
The restriction on Adams State College's eligible student enrollment is also at odds with the description of Amendment 50 set forth in the Ballot Title and Submission Clause, which described the Amendment as "distributing 78% of the remaining gaming tax revenue from this amendment for student financial aid and classroom instruction at community collegesaccording to the proportion of their respective student enrollments . .." (emphasis added).
Thus, I conclude that subsection 12-47.1-701.5(4)(c)(II) is inconsistent with the provisions of Amendment 50, and that Adams State College is entitled to receive funding in proportion to its full-time equivalent student enrollment in its community college programs in the previous fiscal year. *Page 6 
 CONCLUSION
Based on the foregoing analysis, I conclude that the provision of House Bill 09-1272 that purports to limit Adams State College's eligibility for funding under Amendment 50 to enrollment in its associates degree programs that existed as of November 4, 2008 is inconsistent with the provisions of Amendment 50. I also conclude that Adams State College's Associate of Art/Science Programs and their students are constitutionally eligible to receive supplemental student financial aid and classroom instruction programmatic funding under the provisions of Amendment 50, in proportion to Adams State College's full-time equivalent student enrollment in those programs in the previous fiscal year.
Issued this 13th day of July, 2009.
_________________________ JOHN W. SUTHERS Colorado Attorney General
[1] § 12-47.1-701.5(4)(c)(II), C.R.S.
[2] § 23-51-101, C.R.S. (emphasis added).
[3] www.adams.edu/academics/associate-programs/associate-programs.php
[4] § 23-1-109(2), C.R.S.
[5] Service Areas of Colorado Institutions of Higher Education,October, 1995, Part N, § 2.01.
[6] § 23-1-109(2), C.R.S.
[7] See Amendment 50, codified at Colo. Const. art. XVIII, § 9(7)(c)(III)(A).
[8] § 12-47.1-701.5(4)(c)(II), C.R.S
[9] Colo. Const. art. XVIII, § 9(7)(c)(III)(A).
[10] § 23-60-104, C.R.S. (2008).
[11] See Amendment 50, codified at Colo. Const. art. XVIII, § 9(7)(c)(III)(A).
[12] Colo. Const. art. XVIII, § 9(7)(c)(III)(A).
[13] § 12-47.1-701.5(3)(c)(I), C.R.S.
[14] § 12-47.1-701.5(4)(a), C.R.S.
[15] § 12-47.1-701.5(4)(c)(I), C.R.S.
[16] § 12-47.1-701.5(4)(c)(II), C.R.S.